533 So.2d 989 (1988)
STATE of Louisiana
v.
Edward Tyrone WASHINGTON.
No. KA 88 0119.
Court of Appeal of Louisiana, First Circuit.
October 12, 1988.
Rehearing Denied November 30, 1988.
*990 Bryan Bush, Dist. Atty. by Suzan Ponder & Sue Bernie, Asst. Dist. Attys., Baton Rouge, for plaintiff/appellee.
Lawrence Dersona, Baton Rouge, for defendant/appellant.
Before WATKINS, CRAIN and ALFORD, JJ.
ALFORD, Judge.
Edward Tyrone Washington was charged by bill of information with armed robbery, a violation of La.R.S. 14:64. He was tried by a jury, which convicted him as charged. The trial court subsequently imposed a sentence of twenty years at hard labor, without benefit of probation, parole or suspension of sentence. Defendant appealed, urging six assignments of error.

FACTS
Defendant was charged with the armed robbery of Judy Jefferson, the managercashier of a convenience store located in Baton Rouge, Louisiana. Ms. Jefferson, hereinafter referred to as the victim, testified that she noticed four black males walking across the street in front of the store as she waited on a customer. Moments after the customer left, defendant, his *991 brother (Troy Washington), and two companions entered the store. As defendant and his brother approached the counter, the two companions ran to a beer cooler at the back of the store and began to remove cases of beer. Defendant threatened the victim with a large knife and ordered her to open the cash register. Troy Washington jumped behind the counter and pulled the victim to the door of a small storage room. Defendant reached across the counter, opened the register, and began to remove all of the bills. One of the bills covered a black box which was the trigger mechanism for a surveillance camera. When defendant heard the camera begin to operate, he pulled it down from the wall. The four men then fled the store, taking an indeterminate amount of cash (less than $100.00) and several cases of beer.
Despite defendant's attempt to stop the camera, several photographs were taken of defendant and the other men. One of the men, Kyrus Norman, was identified by a Baton Rouge Police officer. After questioning, Kyrus Norman gave a statement in which he admitted that the robbery was planned; however, Norman claimed that the only purpose of the robbery was to take beer from the cooler and that he was not aware that anyone was armed. Kyrus Norman was permitted to plead guilty to a reduced charge of misdemeanor theft. Defendant and his brother were charged with armed robbery.

DENIAL OF MOTION FOR NEW TRIAL
By assignments of error one and two, defendant argues the trial court erred by denying his motions for a new trial. In assignment of error number one, defendant urges the trial court erred by denying the motion urged on the ground that the state failed to disclose inculpatory evidence. In assignment of error number two, defendant submits the trial court erred by denying his motion based on the late discovery of new and material evidence.
Kyrus Norman, one of the participants in the robbery, was called as a witness by the defendant. His testimony revealed that police officers had taped a statement from him concerning his involvement in the robbery. Defendant contends that he was surprised by this testimony. He argues that "[t]he State showed bad faith in that even though defendant had been granted pre-trial discovery, the State intentionally concealed the existence of a recorded statement by Kyrus Norman until it was improperly allowed to be introduced, over defense objection (sic), at the trial of this matter." Defendant also complains that the state failed to provide notice of the existence of this statement, as required by La. Code Crim.P. art. 768. Defendant further submits that the state was required to disclose this information by Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed. 2d 215 (1963), and Giglio v. United States, 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972).
Defendant's assignment of error is without merit on several grounds. Initially, we note defendant's assertion that the state intentionally concealed the existence of the statement is totally without merit. A preliminary examination was conducted on May 19, 1986, almost one year before the trial of May 13, 1987.[1] During the preliminary examination, Officer Stephen Browning of the Baton Rouge City Police testified that a taped statement had been received from Kyrus Norman. Officer Browning related that Norman claimed he had not been involved in the robbery. Norman stated, however, that he had seen defendant in the store at the time of the robbery and further identified the other three persons who were shown in the photographs taken by the surveillance camera. The reporter's certificate and the chronological index prepared by the clerk of court reflect that the transcript was prepared and filed by May 27, 1986. Although defendant's trial counsel did not represent him at the *992 time of the preliminary examination, counsel nevertheless had an ample opportunity to review the transcript of that hearing before the trial was conducted. Moreover, defendant also testified at a bond hearing that immediately followed the presentation of evidence for the preliminary hearing and was certainly aware of the existence of the tape. Thus, even though defense counsel apparently did not review the transcript of that proceeding, in light of the state's disclosure of the tape, as well as defendant's personal knowledge thereof, defense counsel's allegation that the state deliberately concealed the information is totally without merit.
With reference to the state's failure to provide a "768 Notice"[2] to defendant concerning the existence of the taped statement, defendant further claims that, "[i]f the State had followed the rules of criminal procedure, the defense would have known of the inculpatory recorded statement and prepared a defense for it." However, for purposes of La.Code Crim.P. arts. 767 and 768, the term "inculpatory statement" refers to the out of court admission of incriminating facts made by a defendant after the crime has been committed. State v. Labostrie, 358 So.2d 1243, 1248 (La. 1978). [Emphasis added.] Since the facts do not support the contention that Norman's narration of what happened was a confession or inculpatory statement of defendant, there was no necessity for the state to furnish the notice of intention required by La.Code Crim.P. art. 768. See State v. Johnson, 341 So.2d 890, 891 (La.1977).[3]
Defendant's claim that the evidence consisted of impeachment evidence that the state was required to disclose under Brady and Giglio is also without merit. In Giglio, the United States Supreme Court considered whether or not evidence impeaching the credibility of a state witness is exculpatory and, thus, must be disclosed to the defense. The Court noted that Brady v. Maryland held that the suppression of material evidence justifies a new trial irrespective of the good faith or bad faith of the prosecution. Finding that evidence of an agreement as to a future prosecution was relevant to a determination of the credibility of the witness, and that the witness's credibility was an important issue in the case, the Court held that a new trial was required because an assistant United States Attorney had failed to disclose that he had promised a critical witness that the witness would not be prosecuted if he cooperated with the governmental investigation.
In the case sub judice, despite defendant's argument to the trial court that the prosecutor was experienced and, therefore, must have known that the defense would call Kyrus Norman, we find no authority for defendant's claim that the state must reveal evidence relating to the credibility of a defense witness, particularly where the impeachment value of the evidence is dependent upon the witness's decision to testify conversely at trial. Since Norman was not called by the state in its case in chief to establish any element of the crime for which the defendant was charged, the evidence by which the state could impeach his credibility as a defense witness was not within the purview of the Giglio rule.
By assignment of error number two, defendant submits the trial court erred by denying his motion for a new trial in which he claimed that new and material evidence had been discovered since the trial. This alleged newly discovered evidence involved *993 the relationship between a relative of the victim and a relative of a defense witness.
Initially, we note that the only motion for a new trial contained in the record of this proceeding is the motion referring to the impeachment evidence of Kyrus Norman discussed above. With reference to the second motion, defendant's brief states that "[t]his portion of the transcript was not provided to this office. The motion for a new trial was made directly after the verdict was rendered by the court." However, a party moving for the appeal must request the transcription of that portion of the proceedings necessary for review in light of the assignments of error to be urged. La.Code Crim.P. art. 914.1. State v. Vampran, 491 So.2d 1356, 1364 (La.App. 1st Cir.), writ denied, 496 So.2d 347 (La. 1986). Herein, neither the minute entry of the proceeding nor the transcript of the trial itself reveals that defendant filed a motion immediately after the verdict was returned. The record does not reflect any manner in which defendant sought to have his motion recorded or preserved. Thus, there is nothing for this court to review.[4]
In any event, evidence urged on the motion for a new trial is not `newly' discovered if it could have been discovered before or during trial. See State v. Prudholm, 446 So.2d 729, 736 (La.1984). Defendant freely admits that the evidence was discovered during the trial. Indeed, the court conducted a lengthy hearing during the trial concerning the impact of this evidence. Since the evidence was not newly discovered, the trial court did not err by denying defendant's motion urged on this ground.

ABRIDGED QUESTIONING OF THE VICTIM
By assignment of error number three, defendant submits the trial court erred by denying him the right to question the victim after cross-examination. Defendant contends that "[t]he newly discovered evidence [pertaining to the relationship between the victim and Kyrus Norman] clearly proves that the alleged victim deliberately and willfully committed perjury, and as such, her credibility should be questioned."
As previously noted, defendant became aware of the relationship between a relative of the victim and a relative of a defense witness during the trial. By that time, the victim apparently had been released from her subpoena. Defense counsel notified the court that the information had been provided by defendant's girlfriend and that she (or some other relative) was prepared to testify to the relationship. Defendant also requested the court to ask the prosecutor to call the victim back to court on defendant's behalf. The court declined to do so, ruling on the basis that defendant had other witnesses who could present the testimony at issue. The defendant has no absolute right to have a witness recalled to the stand for further cross-examination; the matter is left to the sound discretion of the trial judge. State v. Latin, 412 So.2d 1357, 1361 (La.1982). We can find no abuse of discretion herein.
Defendant now contends the testimony of the victim on the issue of her relationship was critical because the state's case rested heavily on the testimony of the victim, and if she had been recalled she would have had to admit that she had made a prior inconsistent statement. We note, however, that defendant declined to call witnesses who could have presented the evidence he sought. Defendant also failed to request an instanter subpoena for the victim, attempting instead to obtain access to her as a state witness. Although defendant would not have been able to impeach the victim if he had called her as his own witness, defendant could have questioned her about the relationship and *994 presented evidence of the relationship to the jury. In any event, defendant's claim that the victim would have been forced to admit to a prior inconsistent statement is without merit. The record reflects that both the victim and Kyrus Norman presented testimony from which the trier of fact could readily reconcile the victim's statement that she did not know any of the perpetrators with Norman's statement that the victim indicated that she recognized him.[5] Moreover, in light of the extremely tenuous nature of the relationship of these parties (the witness apparently had been the victim's brother-in-law's brother), we seriously doubt that, even if she had been forced to admit the relationship, the victim's testimony on this issue would have crippled her credibility with the jury, particularly in view of the photographs taken by the surveillance camera which showed defendant committing the robbery.

ADMISSION OF IMPEACHMENT EVIDENCE
By assignments of error four and five, defendant submits that the trial court erred by allowing the state to impeach the credibility of Kyrus Norman and to introduce his taped statement. In assignment of error number four, defendant contends the court erred by allowing the state to impeach a defense witness without establishing the proper foundation. In assignment of error number five, defendant submits that the trial court erred by allowing the state to introduce the statement without laying the proper foundation.
Defendant's contention that the state was required to establish a foundation in order to impeach Kyrus Norman is without merit. Defendant submits that the court erred by permitting the state to ask questions of him while referring to a transcript. However, the assistant district attorney denied that the materials used by her were a transcript of the taped statement by Norman.
La.R.S. 15:486 provides as follows:
Each side has the right to impeach the testimony and the credibility of every witness sworn on behalf of the other side.
La.R.S. 15:493 provides as follows:
Whenever the credibility of a witness is to be impeached by proof of any statement made by him contradictory to his testimony, he must first be asked whether he has made such statement, and his attention must be called to the time, place and circumstances, and to the person to whom the alleged statement was made, in order that the witness may have an opportunity of explaining that which is prima facie contradictory. If the witness does not distinctly admit making such statement, evidence that he did make it is admissible.
Kyrus Norman's attention was called to the time, place, circumstances, and the persons to whom the statements were made. He was asked whether he had stated that he saw the victim in the store at the time of the robbery. Norman was evasive and failed to either confirm or deny making a prior statement that there was a lady behind the counter of the store during the robbery. Norman initiated the subject of the taped statement and freely admitted that he had made a statement. At the time of the questioning, the state was not attempting to introduce the contents of the statement; rather, the state was concerned with Norman's admitted participation in the robbery and his statements as to what he saw during the robbery. It is clear that the state is entitled to impeach the testimony and the credibility of a defense witness by the use of his prior inconsistent statements. State v. Redwine, 337 So.2d 1041, 1046 (La. 1976). The questions directed by the state to Kyrus Norman to which the defense raises its objections were merely part of the foundation required by La.R.S. 15:493 to be laid prior to the introduction of the taped statement itself. Consequently, the defendant's argument is without merit.[6]
*995 In assignment of error number five, defendant submits the trial court erred by permitting the state to introduce the taped statement of Kyrus Norman without establishing a predicate for it. The state informed the trial court that the statement was offered in rebuttal to Norman's claim that the state had indicated the proper responses to him. The tape was played to the jury after defendant had rested. Rebuttal evidence is that which is offered to explain, repel, counteract or disprove facts given in evidence by the adverse party. La.R.S. 15:282; State v. Trosclair, 443 So. 2d 1098, 1106, (La.1983), cert. dismissed, 468 U.S. 1205, 104 S.Ct. 3593, 82 L.Ed.2d 889 (1984). The evidence was properly admitted in rebuttal to Norman's trial testimony.

ADMISSION OF HEARSAY EVIDENCE
By assignment of error number six, defendant submits that the trial court erred by permitting the state to introduce the testimony by the attorney, Charles Hayling, who represented Kyrus Norman relative to the circumstances of the taping. Defendant contends that the attorney was a mere observer, not a party to the conversation. Defendant complains that the testimony was inadmissible hearsay evidence offered to prove or disprove a material fact.
Norman's attorney, Mr. Hayling, testified that he participated in negotiations with the district attorney, obtaining an agreement whereby Norman was allowed to plead to a lesser offense in return for a taped statement. The state called Mr. Hayling to dispute Norman's claim that the state had pressured him into relating that the victim was behind the counter at the time the four accomplices entered the store.
Hearsay evidence is evidence of an unsworn, out-of-court statement made by a person other than a testifying witness and offered as proof of the truth of the statement's content. State v. Valentine, 464 So.2d 1091, 1093 (La.App. 1st Cir.), writ denied, 468 So.2d 572 (La.1985). Evidence is not hearsay if introduced for some purpose other than to show the truth of the matter. See State v. Ratcliff, 416 So.2d 528, 532 (La.1982). Mr. Hayling's testimony was not concerned with the answers provided by Norman; rather, his testimony concerned the manner in which the questioning and interviewing were conducted. Therefore, the testimony was not hearsay and was properly admitted by the trial court.
For the reasons assigned in this opinion, the conviction of the defendant is affirmed.
AFFIRMED.
NOTES
[1] At the time of the preliminary examination, defendant was represented by the Office of the Public Defender. Subsequently, the Public Defender withdrew its representation of defendant because of a potential conflict in its representation of Kyrus Norman. Defendant's trial counsel was appointed July 2, 1986.
[2] La.Code Crim.P. art. 768 provides as follows:

Unless the defendant has been granted pretrial discovery, if the state intends to introduce a confession or inculpatory statement in evidence, it shall so advise the defendant in writing prior to beginning the state's opening statement. If it fails to do so a confession or inculpatory statement shall not be admissible in evidence.
[3] Moreover, although La.Code Crim.P. art. 722 provides that a written or recorded confession or inculpatory statement of a codefendant must be made available to defendant upon request if the state intends to use it at trial, defendant did not file a motion seeking production of the statement in accordance with this article. By the time of trial, Norman apparently had already entered his plea. He was not charged in the same bill of information as defendant.
[4] Defendant claims he discovered new and material evidence "concerning the relationship between the victim of the alleged crime and others that are party to this matter." However, the transcript of the trial reflects that, during the trial, defendant's girlfriend told defense counsel that Kyrus Norman's brother, who was then deceased, had been married to the victim's sister, who was also deceased. The victim had previously testified that she was not acquainted with any of the perpetrators; and Kyrus Norman testified that he did not know the victim, although he stated that the victim had indicated to someone that she knew him.
[5] The victim testified that she had worked at that particular store for quite some time before the robbery. Kyrus Norman testified that he had frequently patronized the store.
[6] Had the state chosen to submit the taped statement at that point in the trial, it would have been admissible since the proper foundation had been laid and the defendant did not distinctly admit making the contradictory statements. See State v. Redwine, 337 So.2d at 1047. However, the state reserved the taped statement and later offered it in rebuttal to Norman's claims regarding the circumstances surrounding the making of the statement.