684 So.2d 439 (1996)
STATE of Louisiana
v.
Jerry Lee BERRY.
No. 95 KA 1610.
Court of Appeal of Louisiana, First Circuit.
November 8, 1996.
*446 Julie Cullen and Clay Culatto, Baton Rouge and John Watts, Livingston, for State of Louisiana.
Debra Henkels, Livingston, for Defendant-Appellant Jerry Lee Berry.
Before LOTTINGER, C.J., and FOIL and FOGG, JJ.
LOTTINGER, Chief Judge.
On the evening of Saturday, September 18, 1993, Jerry Lee Berry went to the home of his estranged wife, Ada Berry, raped her at knifepoint and left. The following morning he returned to Mrs. Berry's trailer briefly, then returned again that afternoon when he shot her in the chest and the head with a .44 magnum revolver. Willie Daniels, who lived with Mrs. Berry's mother in a house next door to the trailer, came to his front door, saw the victim lying facedown on the ground outside her trailer, and fired several shots from his .25 revolver in the air in the direction of Berry as he walked away from the trailer toward the road. Berry returned fire, superficially injuring a young girl who was at the house at the time and who saw Berry shoot the victim in the chest and head. Berry then left the scene, but turned himself in to police later that day.
Berry was charged by indictment with second degree murder and aggravated rape La. La. R.S. 14:42 and R.S. 14:30.1. He entered a plea of not guilty and not guilty by reason of insanity. He was found competent to stand trial following a sanity hearing. Thereafter, Berry withdrew his plea of not guilty and not guilty by reason of insanity and entered a plea of not guilty. After trial by jury, Berry was found guilty as charged. The trial court sentenced him to two consecutive terms of life imprisonment at hard labor without benefit of parole, probation or suspension of sentence. Berry now appeals, urging fifty-one assignments of error. We affirm the convictions and sentences, but remand to allow the trial court to correct the minute entry to reflect that Berry is to be given credit for any time served.

DISCUSSION

Jury Venire
By his first and eighth assignments of error, Berry urges that the trial court erred in denying his motions to quash the jury venire and to strike the jury panel. La.Code Crim. P. art. 419 permits challenge of a venire only in the presence of fraud, a condition leading to irreparable injury, or where potential jurors are systematically excluded from the venire solely upon the basis of race. Berry alleges that the Livingston Parish practice of drawing the jury venire from voter registration lists and driver's license rosters operates to prejudice defendants of African-American descent and yields a venire which is nonrepresentative of the population in general; because there were no African-American jurors, he claims he was denied trial by a jury of his peers.
It is well settled that the use of voter registration lists as the sole source from which a venire is compiled is a constitutionally sound practice unless the defendant can show that such a practice discriminates against a certain class of persons to the extent that the venire does not represent a fair cross section of the community. State v. Brogdon, 426 So.2d 158, 166 (La.1983), and citations therein. Berry cites La.Code Crim. P. art. 408.1, which permits each judicial district to determine whether or not the names of prospective jurors will be drawn from sources in addition to the voter registration lists. He urges that every available list should be used, including welfare rosters, food stamp rolls and lists of utility customers.
*447 According to Berry's brief, the 1990 census showed that the Livingston Parish population is approximately 94% white and 6% black; the voter registration rolls show virtually identical percentages, thus indicating a fair cross section of the community. We certainly cannot say that this venire drawn from driver's license rolls as well as from voter registration rosters is in any way nonrepresentative of the Livingston Parish community. These assignments are without merit.

Venue
In connection with challenges to the jury venire, defense counsel moved for a change of venue based upon the assertion that the composition of the venire made it impossible for Berry to be tried by a jury of his peers. The trial court deferred ruling on the motion, but reserved to the defendant his right to reassert it after voir dire, on the condition that the charge of racial prejudice among the venire was substantiated. The motion was renewed after voir dire. After argument, the trial court denied the motion, finding that there was no evidence of prejudice. Berry challenges this ruling by his ninth assignment of error.
A defendant seeking a change of venue has the burden of proving that there exists such prejudice in the collective minds of the community that a fair and impartial trial is impossible. La.Code Crim. P. art. 622; State v. Jones, 593 So.2d 1301, 1315 (La.App. 1st Cir.1991), writ denied, 620 So.2d 868 (La.1993). The judgment of the trial court on a motion for change of venue will not be disturbed on review in the absence of an affirmative showing of error and abuse of discretion. State v. Wilkerson, 403 So.2d 652, 655 (La.1981).
In arguing his motion and again in brief, defense counsel asserted generally that none of the prospective jurors had black individuals as friends or socialized with blacks, and that two prospective jurors mentioned race without being questioned on the subject. There is, however, no record reference to any comment or response on the part of any potential juror which would tend to substantiate counsel's allegations, nor has our independent review of the record revealed any circumstance indicating that a fair and impartial trial was impossible in this case. The defense failed to meet its burden of proof. Consequently, the trial court did not abuse its discretion in denying the motion. This assignment of error lacks merit.

Jurors
By his second, fifth, and sixth assignments of error, Berry contends that the trial court erred in denying his challenges for cause of prospective jurors Brent Williams, Sherry Bissell, and Doris Thomas. Each of these prospective jurors was excused by the defense on peremptory challenges.
A trial court is vested with great discretion in ruling on challenges for cause, and that ruling will not be disturbed unless a review of the voir dire as a whole indicates an abuse of that discretion. State v. McLean, 525 So.2d 1251, 1254 (La.App. 1st Cir.), writ denied, 532 So.2d 130 (La.1988). La. Code Crim. P. art. 797 provides in pertinent part that a juror may be excused for cause when the juror is not impartial, whatever the cause of his partiality; an opinion or impression as to the guilt or innocence of the defendant is not of itself sufficient ground of challenge to a juror if he declares, and the court is satisfied, that he can render an impartial verdict according to the law and evidence.
Berry urges that the trial court should have excused Brent Williams for cause because he had been the victim of a shooting. However, Williams testified that he would be able to put his personal feelings aside and make a decision based upon the evidence. Ms. Bissell's mother had been the victim of a recent robbery, but she testified that she would have "no problem" finding Berry not guilty if the State failed to prove its case. The defense sought to challenge Ms. Thomas for cause based upon defense counsel's impression that she was bored and unconcerned with the proceedings. However, Ms. Thomas expressed only a concern that her service might be interrupted by a migraine headache, to which she is occasionally subject. Nothing in her voir dire testimony indicates any unwillingness to be a fair, impartial and attentive juror, and any illness she might have experienced would have been *448 covered by the presence of an alternate juror.
After reviewing the testimony of Mr. Williams, Ms. Bissell and Ms. Thomas, along with the voir dire as a whole, it is evident that the trial court did not abuse its discretion. The testimony of these potential jurors indicates that they were willing to apply the law as given by the trial court and would be fair and impartial. Under these circumstances, we conclude that the trial court correctly denied Berry's challenges for cause. Consequently, these assignments of error are without merit.
Berry's seventh assignment of error challenges the trial court's denial of the defense challenge for cause of Nellie Schwartz. Ms. Schwartz was seated as an alternate juror, but her services were not required as an active member of the panel. As the defendant suffered no prejudice from the trial court's ruling in this regard, we find no merit in this assignment. See La.Code Crim. P. art. 921.

Voir Dire Questions
Berry's third and fourth assignments of error urge that the trial court unfairly limited the scope of defense counsel's voir dire examination of two prospective jurors.
La. Const. art. I, § 17, guarantees that the accused shall have a right to full voir dire examination of prospective jurors. La.Code Crim. P. art. 786 further provides that the court, the State and the defendant shall have the right to examine prospective jurors. The purpose of voir dire examination is to determine qualifications of prospective jurors by testing their competency and impartiality. It is designed to discover bases for challenges for cause and to secure information for an intelligent exercise of peremptory challenges. While the trial judge must afford wide latitude to counsel in the conduct of voir dire examination to effectuate the accused's right to full voir dire of prospective jurors guaranteed in La. Const. art. I, § 17, the scope of voir dire examination is within the sound discretion of the trial judge and his ruling will not be disturbed on appeal in the absence of a clear abuse of that discretion. In order to determine whether a trial judge has in fact afforded a sufficiently wide latitude to the defendant in examining prospective jurors, a review of the trial judge's rulings should be undertaken on the record of the voir dire examination as a whole. State v. Hall, 616 So.2d 664, 668-69 (La.1993).
In the first instance, the subject of assignment of error number three, defense counsel asked a potential juror what he thought "Mr. Berry did in order to get seated in this seat, or as a defendant in this case?" The trial court sustained the State's objection to the form of the question despite defense counsel's argument that it was necessary to probe the potential juror's understanding of the presumption of innocence. The trial court instructed the venire that "[e]very defendant is presumed to be innocent until each and every element of the offense charged, is proved beyond a reasonable doubt" and offered defense counsel the opportunity to rephrase the question.
The second instance, raised by assignment of error number four, involved defense counsel's questioning of one prospective juror as to whether he knew the difference between a shotgun and a handgun. The trial court intervened, instructing the panel that they were to consider only evidence brought forth in the courtroom.
Our review of the voir dire as a whole, in conjunction with the trial court's instructions to the venire, reveals no abuse of discretion in this regard. These assignments are without merit.

New Witnesses
Assignments of error sixteen and thirty-five were taken in response to the court's rulings on State's witnesses who were added to the witness list after voir dire. After opening statements were concluded, the State's witness list included the names Deidra Richardson, Suzanne Brazille and George Dunn. The defense objected to these additions because there had been no opportunity to determine if a potential conflict existed with any of the jurors. The court overruled the objection and declined to reopen voir dire. Later, when Suzanne Brazille was *449 called to the stand, the defense re-urged its objection, which the court overruled.
On appeal, the defense urges that these rulings were erroneous, but fails to state any basis upon which a showing of prejudice to the defendant or impairment of his substantial rights could be made. See La.Code Crim. P. art. 921. The defense makes no allegation that any of the jurors were in any way acquainted with any of these additional witnesses; indeed, only two of the three were called to testify. In the absence of any showing of prejudice to the defendant, we find these assignments to be without merit.

Motions for Mistrial
By assignments of error ten, eleven, thirteen, twenty-eight, thirty-seven, thirty-eight and forty-nine, Berry urges that the trial court erred in denying his motions for mistrial.
The first motion, the subject of assignment of error number ten, was made in response to remarks made by the bailiff to defense counsel which counsel contends were audible to the jury venire. The trial court took evidence on this issue outside the presence of the venire. The bailiff, Wesley Muse, testified that, before the court session began, he approached defense counsel Debra Henkels and asked if her client was still in jail, what time she wanted him brought to court, and whether she wanted him dressed in street clothes. He stated that he was very close to counsel when he spoke and that he did not speak loudly. The trial court postponed ruling on the defense motion, allowing counsel to explore the issue in voir dire. In addition, the trial court received negative responses when each panel was asked if any of the prospective jurors had overheard the conversation between the bailiff and defense counsel. Co-counsel for the defense nevertheless re-urged the motion for mistrial after the jury had been chosen. Ms. Henkels then took the stand and testified that it was her impression that the bailiff had spoken loudly enough for some of the venire to hear. The trial court denied the motion for mistrial.
La.Code Crim. P. art. 775 provides that a mistrial shall be ordered when prejudicial conduct in or outside the courtroom makes it impossible for the defendant to obtain a fair trial. However, mistrial is a drastic remedy which should be granted only when the defendant suffers such substantial prejudice that he has been deprived of any reasonable expectation of a fair trial. State v. Selvage, 93-1435, pp. 5-6 (La.App. 1st Cir. 10/7/94); 644 So.2d 745, 750, writ denied, 94-2744 (La.3/10/95); 650 So.2d 1174. Determination of whether a mistrial should be granted is within the sound discretion of the trial court, and the denial of a motion for mistrial will not be disturbed on appeal without abuse of that discretion. State v. Lynch, 94-0543, p. 10 (La.App. 1st Cir. 5/5/95); 655 So.2d 470, 477, writ denied, 95-1441 (La.11/13/95); 662 So.2d 466.
In the instant case, the trial court took particular care to determine whether any of the potential jurors had overheard the conversation between the bailiff and defense counsel. The members of the venire affirmatively indicated that they had not. Under these circumstances, there has been no showing of any prejudice tending to deprive the defendant of the reasonable expectation of a fair trial, and the trial court did not abuse its discretion in denying this motion for mistrial. Assignment number ten lacks merit.
Berry's forty-ninth assignment of error deals with an incident in which one juror went with the bailiff to bring beverages back to the jury deliberation room; Berry asserts that this action violated the sequestration provisions of La.Code Crim. P. art. 791. Defense counsel brought the issue to the court's attention in the form of a motion for mistrial. The trial court heard evidence from the bailiff, who testified that he escorted the juror in question to the soft drink machine after members of the jury asked if they could get cold drinks before beginning deliberations.
The purpose of La.Code Crim. P. art. 791 is to protect jurors from outside communications which might influence them to base their verdict on something other than the evidence introduced at the trial. Reversal is required when an outside communication occurs which is prejudicial to the accused. Where circumstances indicate, *450 however, that no prejudice could have occurred to the accused, the brief separation of a juror may be insufficient grounds to set aside the verdict. State v. Beridon, 449 So.2d 2, 5 (La.App. 1st Cir.), writ denied, 452 So.2d 178 (La.1984).
Here, there is no allegation that the juror in question communicated with anyone other than the officer of the court charged with care of the jury. Furthermore, the testimony indicates that the juror's absence was very brief (about five minutes) and that it occurred before the jury began its deliberations. Under these circumstances, we are unpersuaded that the defendant was prejudiced in any way. The trial court did not abuse its discretion in denying the defense motion for mistrial on this basis. Assignment forty-nine also lacks merit.
By assignment of error number twenty-eight, Berry urges that the trial court erred in denying his motion for mistrial based upon the State's reference to the fact that the defense could call witnesses. The specific instance cited arose during the defense's cross-examination of one of the officers at the scene of the homicide. Defense counsel asked the witness if Willie Daniels had told him that he had shot in the air twice. The State objected that the question called for hearsay, and commented that Mr. Daniels was available to testify. At a bench conference, counsel for the State contended that no impermissible reference to the defense's ability to call witnesses had arisen, as Mr. Daniels was scheduled to testify for the State. The court nevertheless sustained the defense's objection and admonished the jury that the defense was under no obligation to call any witnesses at all.
The defense assigned error to the denial of its motion for mistrial. We are unpersuaded that the trial court made any error in this regard, however. La.Code Crim. P. art. 770(3) provides for mandatory mistrial when the judge, district attorney or court official refers before the jury to the failure of a defendant to testify in his own behalf. There was no such reference in the instant case. The comments to which the defense objected in this instance did not have the effect of shifting the burden of proof to the defendant or of otherwise implying that the defendant had an obligation to call witnesses. Furthermore, the trial court, through its admonishment, immediately corrected any misconception which the district attorney's comment might have created in the minds of the jury. This assignment is without merit.
By assignments of error numbers eleven and thirteen, Berry contends that the trial court erred in denying his motions for mistrial based upon the defense's inability to secure a more experienced and qualified forensic pathologist. The defense had requested funding for a forensic pathologist prior to trial, but this request had been denied (4/28/94). Before opening statements, the defense secured three photographs of the victim from the State. Defense counsel explained that its expert in firearms and tool marks advised that a forensic scientist should be consulted to better determine the caliber of bullet which had passed through the victim's head; the defense needed this information to bolster its theory that Mrs. Berry had been killed by a bullet shot from Willie Daniel's.25 handgun rather than the .44 used by the defendant. The trial court took the motion for mistrial under advisement, but allowed the defense to retain a forensic pathologist. The defense was unable to secure the services of its first choice in forensic pathologists, but nevertheless was able to have the photographs and autopsy protocol reviewed by an expert in that field. The defense re-urged its motion for mistrial, contending that the State's failure to timely provide the photographs so that the defense could take the necessary steps to secure an experienced forensic pathologist had denied the defendant his right to a fair trial. The trial court denied the defense motion.
On motion of the defendant, the trial court may order a mistrial as a sanction for the State's failure to comply with a discovery order. La.Code Crim. P. art. 729.5 A. However, a trial court will not be found to have abused its discretion in declining to order a mistrial unless substantial rights of the defendant have been prejudiced by the State's untimely production of discoverable materials. See State v. Mitchell, 412 So.2d 1042, *451 1045 (La.1982). In the instant case, as counsel for the State observed in oral argument, there is nothing to indicate that the defense could not have secured a more experienced forensic pathologist in the geographic area even though its first choice was unavailable. Furthermore, we have examined the photographs in question, which are of extremely poor quality, and find it highly unlikely that a definitive determination of the caliber of bullet could have been made from any expert's perusal thereof. Finally, as the defendant was ultimately provided with the funding he requested, we are unpersuaded by his argument that a disparity in funds available to the State and to the defense in any way denied Berry a fair trial. Based upon our review of the record as a whole, we cannot say that the trial court abused its discretion in denying defendant's motions for mistrial on this basis. Assignments eleven and thirteen are without merit.
Assignment of error number thirty-seven urges that the trial court erred in denying a defense motion for mistrial based upon the State's failure to timely produce to the defense a statement made by Willie Daniels to Detective Larry Tate on the day of the shooting. After Mr. Daniels testified on direct examination, the trial court examined the prior statement in question and, finding some inconsistencies, gave the defense time to review the statement before cross-examining the witness. At the conclusion of this witness' testimony, the defense moved for a mistrial. The trial court denied the motion, noting that the defense had been provided with the statement and had used it on cross-examination to impeach the witness' testimony to "great advantage." As the trial court correctly ruled, mistrial would be an inappropriate sanction against the State in this instance where there was no showing that the defendant's substantial rights had been prejudiced. The trial court did not abuse its discretion in denying this motion. Accordingly, this assignment lacks merit.
After the trial court denied the defense motion which was the subject of assignment number thirty-seven, the defense moved to sanction the State for its failure to provide Willie Daniels' statement by requiring the State to turn over its entire investigative file to the defense, or in the alternative, to require the State to submit its files to the court for examination. The court's denial of this motion is the subject of assignment of error number thirty-eight. In response to this motion, the district attorney argued that there had been no discovery violation in that no exculpatory information had been contained in Mr. Daniel's statement to police; while the statement provided the defense with material useable to impeach Mr. Daniel's testimony regarding the number and sequence of shots fired, there was nothing therein to indicate that anyone other than the defendant shot the victim. The trial court agreed with this argument and thus denied the motion.
Evidence which can be used to impeach the credibility of a key witness is discoverable under Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). See State v. Washington, 533 So.2d 989, 992 (La.App. 1st Cir.1988), citing Giglio v. United States, 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972). Louisiana statutes regulating discovery, including that which provides for imposition of penalties for noncompliance, are intended to eliminate unwarranted prejudice which could arise from surprise testimony. See State v. Selvage, 93-1435 at p. 6; 644 So.2d at 750. Given the absence of any showing of prejudice to the defendant, as noted in the discussion of assignment of error number thirty-seven, we find no abuse of the trial court's discretion in declining to impose the sanction requested by the defense. This assignment lacks merit.

Production of Statement
Berry's fortieth assignment of error urges that the trial court erred in denying defense counsel's oral motion for the State to produce the transcribed statement of its witness, Valencia Dunn, made to police during their investigations. Berry contends that the statement contained exculpatory evidence.
Except as specifically provided by statute, a defendant in Louisiana is not entitled to statements by witnesses made to the *452 district attorney or to agents of the State. La.Code Crim. P. art. 723. However, the defendant may not be denied exculpatory statements made by a witness other than the defendant, provided the statement is material and relevant to the issue of guilt or punishment. La.Code Crim. P. art. 718. The trial court may conduct an in camera inspection to determine if inconsistencies or exculpatory information exists in the requested materials, and seal and make a reviewable record of all documents it examines in camera. See State v. Smith, 504 So.2d 1070, 1079 (La.App. 1st Cir.1987).
In the instant case, the trial court examined Ms. Dunn's statement and, finding nothing exculpatory therein, declined to order its release. We have independently reviewed both the statement and Ms. Dunn's testimony. We find no material inconsistencies between the statement and trial testimony, and nothing remotely exculpatory in the statement. Accordingly, the trial court did not err in denying the defense motion. This assignment lacks merit.

Motion to Exhume
Before opening statements, the defense requested an ex parte hearing for the court to hear evidence from the defense's ballistics expert. Ronald C. Jewel testified that he was unable to determine from the only available photographs of the deceased the caliber of bullet which had passed through her head. He opined that a forensic pathologist might better be able to make this determination from the photographs and that he might have been able to make a determination if he were given the opportunity to view the body itself. Defense counsel then related to the court the representations of a forensic pathologist who indicated that it might be helpful to examine the victim's skull. The defense moved the court to allow the exhumation of the victim's body for this purpose. The court concluded that exhumation was unwarranted, noting that the question about the caliber of bullet which had struck the victim in the head was one of which the defense had been aware for some time.
By assignment of error number twelve, Berry contends, without any significant argument, that he was denied his constitutional right to present a defense by the trial court's denial of his motion to exhume. Such a request should be granted only where it is imperatively demanded under the circumstances and is necessary for the due administration of justice; the decision rests within the court's discretion. See 41 C.J.S. Homicide § 323 (1991). Here, the only evidence offered to support the defense motion was the ballistics expert's statement that viewing the victim's skull "could" help determine the caliber of bullet which passed through it. The court was not given the opportunity to hear from the forensic pathologist but instead had to rely merely upon defense counsel's representations as to what that expert had said. Given the paucity of evidence offered to support the drastic remedy suggested by the defense, we cannot say that the trial court erred in denying the motion. See State v. Langley, 94-00326 (La. App. 3rd Cir. 4/14/94); 635 So.2d 784, 785, writ granted in part on other grounds, 94-0853 (La.4/14/94); 636 So.2d 607. We find no merit in this assignment.

Hearsay
By assignments of error seventeen and eighteen, Berry urges that the trial court erred in overruling defense counsel's objections to certain testimony offered by the Livingston Parish Coronor, Dr. Keith Mack. Dr. Mack performed only a preliminary, external examination of the deceased; the autopsy was performed by Orleans Parish forensic pathologist Dr. Richard Tracy. On redirect examination, counsel for the State asked Dr. Mack to explain where Mrs. Berry was shot. The defense objected when Dr. Mack's answer included information obtained from Dr. Tracy's autopsy report. The trial court overruled the objections, and Dr. Mack proceeded to describe the wounds; his testimony appears to have been drawn not only from the autopsy report, but also from his own observations on examining the body.
The appropriate standard of review to be applied in determining the effect of the improper admission of evidence is whether the error was harmless beyond a *453 reasonable doubt; the court must determine, beyond a reasonable doubt, that the improperly admitted hearsay did not contribute to the verdict. State v. Banks, 439 So.2d 407, 409 (La.1983). The erroneous admission of hearsay may be harmless beyond a reasonable doubt if there is other evidence of the truth of the hearsay, the speaker is present for cross-examination, or there is independent evidence which confirms the hearsay. See Banks at 409-410. Dr. Tracy testified shortly after Dr. Mack; thus, the speaker in this case was available for cross-examination and offered confirmation of Dr. Mack's testimony. Even assuming, arguendo, that the information attested to by Dr. Mack was inadmissible hearsay, any error in its admission was harmless beyond a reasonable doubt. We find no merit in this assignment.
Assignments twenty-one through twenty-four address objections raised during the testimony of Detective Larry Tate. First, on cross-examination, defense counsel questioned Detective Tate about the statement of one of the witnesses at the murder scene, Thomas Simmons. The State objected on the grounds of hearsay when defense counsel asked, "What did Thomas Simmons have to say?" Counsel urged that the requested testimony was not hearsay, as it was not offered to prove the truth of the matter asserted. The trial court nevertheless sustained the State's objection.
La.Code Evid. art. 801 C provides that a statement not introduced to prove the truth of the matter asserted is not hearsay. However, the mere assertion that the statement is not offered to prove the truth of the matter asserted does not necessarily render the statement admissible; some other purpose for admitting the testimony must be shown. State v. Hicks, 607 So.2d 937, 946-47 (La.App. 2d Cir.1992). As the trial court noted, the defense provided no persuasive rationale for admitting the testimony. We find no merit in assignment number twenty-one.
Defense counsel next asked Detective Tate, "From your investigation, what was the vantage point of Thomas Simmons at the time all this took place?" In response to the State's hearsay objection, defense counsel urged that his question solicited information based upon the detective's factual findings made in the course of his investigation. Counsel cited La.Code Evid. art. 803(8)(b)(i). However, as the trial court noted in sustaining the State's objection, the cited article specifically excludes "[i]nvestigative reports by police or other law enforcement personnel" from the hearsay exception for public records and reports. A similar rationale applies to defense counsel's questions of Detective Tate regarding how far certain witnesses were from the shooting and the direction of gunfire at the scene. Assignments of error twenty-two, twenty-three and twenty-four are thus without merit.
Likewise, for the reasons stated above, we find no merit in assignments of error twenty-six, twenty-seven and twenty-nine, which deal with questions asked of Detective Murphy Martin regarding his report and witness' statements contained therein.
Assignment of error number thirty also refers to defense cross-examination of Detective Martin. The detective testified that, from briefly observing the victim before she was taken by medical personnel, he believed the head wound to have originated from the front rather than the back. The State objected when defense counsel asked the witness about "information that you had, when you went back to the scene?" Defense counsel urged at this point and later during a bench conference out of the jury's presence that he needed to know the detective's "state of mind" as he proceeded with the investigation. The trial court sustained the objection, noting first that the question at issue once again elicited inadmissible hearsay statements. The court further observed that the officer's state of mind was irrelevant. As testimony on this subject could not tend either to show or to negate the commission of the offense or intent, its lack of relevance rendered it inadmissible. La.Code Evid. art. 402; see also State v. Trosclair, 584 So.2d 270, 275 (La.App. 1st Cir.), writ denied, 585 So.2d 575 (La.1991). The trial court did not err in sustaining the State's objection. This assignment is without merit.
*454 Berry's thirty-sixth assignment of error challenges the trial court's action in overruling a defense objection to questions asked of State witness Mae Belle Green. When the prosecutor asked Ms. Green if the victim was "afraid" of the defendant, defense counsel objected, urging that the question called for the witness to "project Mrs. Berry's state of mind." However, the question actually elicited Ms. Green's impression of the victim's concerns, in the context of a series of questions dealing with the witness' own concerns about the defendant's impending visit to the victim's home the evening before she was murdered. The trial court had carefully instructed the witness to avoid hearsay testimony, and our review of her testimony reveals that she heeded this instruction. We find no error in the trial court's ruling on this objection, and no merit in this assignment.
Assignment number forty-three challenges the trial court's ruling on testimony offered by defense witness Dianne Berry, the defendant's sister. Ms. Berry testified that the victim called her home on the evening of September 18, 1993 and talked to the defendant. When the witness began to relate what she had heard her brother say to his estranged wife on the phone, the State objected on the grounds of hearsay. A bench conference was held out of the jury's hearing, during which defense counsel suggested that the present sense impression exception to the hearsay rule applied. The testimony offered in this instance, however, clearly does not fall under the present sense impression exception, which allows admission of a statement describing or explaining an event or condition made while the declarant, in this case Mr. Berry, was perceiving the event or condition, or immediately thereafter. See La.Code Evid. art. 803(1). Ms. Berry's recollection of what her brother said to his wife on the telephone does not fall under this exception to the hearsay rule. The trial court did not err in sustaining the State's objection. This assignment is without merit.

Physical Evidence
Assignments of error fifteen and thirty-one deal with three photographs of the decedent. One shows the victim's face, a second depicts the back of her head, and the third shows her chest. The defense moved to exclude these photographs before opening statements were made; the State argued that their probative value outweighed any potential prejudice which might result to the defendant from their introduction and noted that these were the only available photographs of the victim. The trial court denied the defense's motion to exclude the photographs. Later, when the State moved to introduce the photographs as State's Exhibits Thirteen, Fourteen and Fifteen, the defense objected on the grounds that they were more prejudicial than probative. The trial court opined that the photographs were not sufficiently gruesome to "activate [La.Code Evid. art.] 403", and overruled the defense objection.
Assignments nineteen and twenty refer to eleven photographs taken at the scene of the crime after the body of the victim had been removed. The defense objected to introduction of several of the photos on two separate occasions; both objections were overruled. The trial court heard argument on the issue outside the jury's presence after the initial objection. The defense stated that the photos showing bullet holes in the house and one photo indicating the position of the body relative to the trailer were not objectionable, but urged that the photos of blood on the ground were "repetitive and inflammatory."
La.Code Evid. art. 403 provides that otherwise relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or waste of time. Photographs which illustrate or shed light upon any fact or issue in a case or which are relevant to describe a person, place or thing depicted are generally admissible. State v. Williams, 632 So.2d 351, 362 (La.App. 1st Cir.1993), writ denied, 94-1009 (La.9/2/94); 643 So.2d 139. A reviewing court will not find that photographs were admitted in error unless they are so gruesome as to overwhelm the jurors' reason and lead them to convict the defendant without sufficient other evidence. State v. Bourque, *455 622 So.2d 198, 236 (La.1993). Our inspection of the photographs at issue reveals them to be neither gruesome nor inflammatory. Even had they been somewhat gruesome, they served to corroborate other testimony about the manner in which the victim died, and were thus relevant in proving the State's case against the defendant. The trial court did not err in admitting these photographs. Assignments fifteen, nineteen, twenty and thirty-one lack merit.
The defense also moved that the State's photographic evidence be excluded as a sanction against the State for its failure to provide the photos of the victim to the defense in a more timely fashion. The trial court observed that it had already imposed sanctions upon the State in this regard, including two continuances to allow the defense time to respond to the photographs; exclusion of the evidence would, therefore, be inappropriate. Berry urges in assignment number fourteen that the court erred in this ruling.
As previously noted, La.Code Crim. P. art. 729.5 allows the court to impose a variety of sanctions, including continuances and exclusion of evidence, against a party which has failed to comply adequately with discovery and inspection provisions. However, exclusion of evidence is not warranted unless there is substantial prejudice to the defendant; such prejudice could consist of surprise or a showing that the undisclosed evidence would have changed the defense strategy. State v. Hooker, 623 So.2d 178, 182 (La.App. 2d Cir.1993). There is no indication of surprise in this case; although the defense did not receive clear copies of the photos of the decedent until the trial had commenced, less adequate but nevertheless recognizable copies had been provided to the defense much earlier. Similarly, the defense made no showing either to the trial court or to this Court that the late arrival of the photographs affected its strategy to the defendant's substantial prejudice. The trial court did not abuse its discretion in declining to impose the sanction of exclusion under the circumstances presented here. Assignment number fourteen is without merit.
Berry's forty-first and forty-second assignments of error urge that the trial court erred in overruling defense objections to admission of State's Exhibit Ten, a bag containing a knife and clothing belonging to the victim, and State's Exhibit Seven, an evidence bag containing three spent .44 cartridges. Berry contends that these items were entered into evidence without proper foundation or positive identification, and that the chain of custody was broken.
It is well settled that demonstrative evidence must be identified to be admitted at trial. See La.Code Evid. art. 901 A. This identification may be visual, by testimony at trial that the object exhibited is the one related to the case, or it may be identified by a chain of custody, by establishing the custody of the object from the time it was seized to the time it was offered into evidence. For admission, it suffices if the custodial evidence establishes that it was more probable than not that the object is the one connected to the case. A preponderance of the evidence is sufficient. Moreover, any lack of positive identification or a defect in the chain of custody goes to the weight of the evidence rather than to its admissibility. Ultimately, a chain of custody or connexity of the physical evidence is a factual matter to be determined by the jury. State v. Pittman, 486 So.2d 895, 896 (La.App. 1st Cir. 1986).
Shortly after the rape, the victim went to the hospital where she was examined and where she gave a statement to police concerning the incident. This taped statement was admitted into evidence at trial. The jury heard the victim state that Berry had obtained a large kitchen knife from her kitchen and threatened to kill her if she did not submit; she told police the knife was in her house. Detective Larry Tate testified that the victim described a large kitchen knife when he took her statement at the hospital, and that he asked her to bring the knife and the clothes she wore at the time of the rape with her when she came to the station to file charges on Monday morning. Deidra Richardson, the victim's niece, testified that she went with her aunt to pick up some things from her trailer early Sunday *456 morning; Ms. Richardson helped the victim collect a large kitchen knife from the bathroom floor and place it in a plastic bag along with some of the victim's clothes; she saw the victim put the bag on the living room sofa. Ms. Richardson identified the knife, clothes and bag offered into evidence as those she had seen the morning after the rape. Bernadette Tucker, a member of the victim's family who helped clear out the victim's trailer after her funeral, testified that she found the plastic bag with knife and clothing on the sofa, tied up the bag and gave it to Janice Waterman. Ms. Waterman, the victim's employer, testified that the victim's mother had called her for advice about the bag found in the victim's trailer; family members brought the bag to Ms. Waterman, who turned it over, unaltered, to the sheriff's office. Based upon this evidence, we find no error in the trial court's finding that the jury could infer that the knife offered into evidence was the one utilized in the alleged rape.
State's Exhibit Seven was an envelope containing three spent .44 cartridges. Detective Tate testified that he received these casings from Trooper John Kling, who had recovered them at the crime scene. Trooper Kling testified that he picked up one of the casings at a spot depicted in State's Exhibit Five-K. Suzanne Brazille, a relative of the victim, testified that she spotted one of the casings and picked it up to give to an officer at the scene without realizing she should have avoided touching it. Ford Baker, the State's expert accepted in firearms identification and tool markings as they relate to firearms identification testified that the three .44 casings had been fired from the.44 magnum revolver recovered from Berry when he turned himself in to police. Although the testimony does not unequivocally demonstrate who retrieved each casing and its exact location at the crime scene, it is clear that all three were signed into an evidence envelope at 3:30 p.m. on the afternoon of the shooting and that all three were fired by the defendant's gun. The trial court did not err in permitting the jury to view this evidence and make its own inferences therefrom. Assignments forty-one and forty-two are without merit.

Expert Testimony
Assignments of error thirty-two, thirty-three and thirty-four address the propriety of qualifying Ford Baker as an expert witness. The State initially tendered Mr. Baker as an expert in the field of firearms and tool markings; when the defense objected that the field was overly broad, the prosecutor narrowed the tender to firearms identification. The defense maintained its objection to the witness' expertise, observing that he had had only on-the-job training in the field. The court accepted Mr. Baker as an expert in firearms identification. During the course of Mr. Baker's testimony, the prosecutor's questions addressed the area of tool markings and the defense objected that such questions were beyond the scope of Mr. Baker's expertise. The trial court sustained this objection, but allowed the State to inquire further into Mr. Baker's credentials regarding tool markings. Mr. Baker explained that firearms identification is a specialized area of the more general field of tool markings. Ultimately, the trial court accepted Mr. Baker, over the defense's continued objection, as an expert in firearms identification and tool marks insofar as they relate to firearms identification.
La.Code Evid. art. 702 provides for the qualification of expert witnesses whose testimony will assist the trier of fact to understand the evidence or to determine a fact at issue. Trial courts are vested with great discretion in determining the competence of an expert witness, and rulings on the qualification of a witness as an expert will not be disturbed unless there was an abuse of that discretion. State v. Bourque, 622 So.2d at 237. A combination of specialized training, work experience, and practical application of the expert's knowledge can combine to demonstrate that that person is an expert; a person may qualify as an expert based upon experience alone. See State v. Myles, 432 So.2d 1018, 1020 (La.App. 1st Cir.1983). Here, the court heard testimony demonstrating Mr. Baker's extensive on-the-job training under the tutelege of individuals with years of experience in the fields in which Mr. Baker *457 was tendered, as well as Mr. Baker's considerable post-training experience in the field. The record holds nothing to support the contention that the trial court abused its discretion in qualifying Mr. Baker as an expert witness. These assignments are without merit.
By assignment of error number twenty-five, the defense urges that the trial court erred in overruling its objection to a question asked of Detective Tate by the State on redirect examination. During cross-examination of this witness, defense counsel had elicited testimony indicating that no photographs of the victim's body had been taken at the crime scene. The body had been taken to the morgue before Detective Tate arrived at the scene; he testified that, in general, he considered it good practice to photograph the body of a homicide victim before it was removed by medical personnel. Apparently in response to this line of questioning, the State asked Detective Tate on redirect if he would refuse to allow medical personnel to try to save a victim's life in order to take pictures of where the victim was located. Defense counsel objected, urging that the question was speculative, a hypothetical question asked of a nonexpert. We find that the trial court correctly overruled the defense objection in this instance. Contrary to the defense's argument, the State's question is more properly considered one eliciting clarification of customary police procedure, information clearly within the realm of this witness' personal knowledge. See La. Code Evid. Art. 602. This assignment is meritless.

Competency of Minor Witness
During the course of the trial, the defense moved to exclude the testimony of Valencia Dunn, a teenager, on the basis that she had been interviewed by the police without a parent or guardian present. The motion was denied. This ruling is challenged in assignment of error number thirty-nine.
Contrary to defense counsel's assertions at trial and before this Court, no law requires that a minor's guardian be present at a police interview. This witness, who was fifteen at the time of the interview in question, was interviewed solely as a witness; the issue of self-incrimination thus does not arise and the jurisprudence cited by the defense is inapposite.
The trial court is vested with wide discretion in determining the competency of child witnesses, and, on appeal, its ruling is entitled to great weight and will not be disturbed in the absence of manifest error, in light of the trial court's advantage of seeing and hearing the witness. State v. Bennett, 591 So.2d 1193, 1195 (La.App. 1st Cir.1991); writ denied, 594 So.2d 1315 (La.1992). Our review of the record reveals no trial court error in this regard. This assignment lacks merit.

Responsive Verdicts
By assignment of error number forty-four, Berry contends that the trial court erred in granting the State's motion to exclude simple rape and attempted simple rape as responsive verdicts to the charge of aggravated rape.
La.Code Crim. P. art. 814 A(8) provides that the responsive verdicts to a charge of aggravated rape are guilty, guilty of attempted aggravated rape, guilty of forcible rape, guilty of attempted forcible rape, guilty of sexual battery, guilty of simple rape, guilty of attempted simple rape and not guilty. La. Code Crim. P. art. 803 provides that the court shall charge the jury as to the law applicable to each verdict possible under Article 814. However, Article 814 C states that the court shall exclude a responsive verdict if, after all the evidence has been submitted, the evidence, viewed in a light most favorable to the state, is not sufficient reasonably to permit a finding of guilty of the responsive offense.
La. R.S. 14:43 defines simple rape as follows:
A. Simple rape is a rape committed when the anal or vaginal sexual intercourse is deemed to be without the lawful consent of a victim who is not the spouse of the offender because it is committed under any one or more of the following circumstances:

*458 (1) When the victim is incapable of resisting or of understanding the nature of the act by reason of stupor or abnormal condition of the mind produced by an intoxicating, narcotic, or anesthetic agent, administered by or with the privity of the offender; or when victim has such incapacity, by reason of a stupor or abnormal condition of mind from any cause, and the offender knew or should have known of the victim's incapacity; or
(2) When the victim is incapable, through unsoundness of mind, whether temporary or permanent, of understanding the nature of the act and the offender knew or should have known of the victim's incapacity; or
(3) When the female victim submits under the belief that the person committing the act is her husband and such belief is intentionally induced by any artifice, pretense, or concealment practiced by the offender.
B. For purposes of this Section, a person shall not be considered to be a spouse if a judgment of separation from bed and board has been rendered, or if the person and the offender are not legally separated but are living separate and apart and the offender knows that a temporary restraining order, preliminary or permanent injunction, or other order or decree has been issued prohibiting or restraining the offender from sexually or physically abusing, intimidating, threatening violence against, or in any way physically interfering with the person.
Attempt is defined in La. R.S. 14:27 in pertinent part as follows:
A. Any person who, having a specific intent to commit a crime, does or omits an act for the purpose of and tending directly toward the accomplishing of his object is guilty of an attempt to commit the offense intended; and it shall be immaterial whether, under the circumstances, he would have actually accomplished his purpose.
* * * * * *
C. An attempt is a separate but lesser grade of the intended crime; and any person may be convicted of an attempt to commit a crime, although it appears on the trial that the crime intended or attempted was actually perpetrated by such person in pursuance of such attempt.
In support of its motion to exclude the responsive verdicts of simple rape and attempted simple rape, the State relied upon State v. Williams, 632 So.2d 351 (La.App. 1st Cir.1993); writ denied, 94-1009 (La.9/2/94); 643 So.2d 139, which held that guilty of simple rape and guilty of attempted simple rape are not appropriate responsive verdicts to aggravated rape where the evidence established that the defendant was the spouse of the victim at the time of the offense. As the trial court in the instant case found, there was no evidence to suggest that Ada and Jerry Berry were no longer married at the time of the offense in question. However, State's Exhibit Twelve includes an order (attached to Mrs. Berry's August, 1993 petition for divorce) which issues a "preliminary injunction" prohibiting defendant from communicating with or in any way accosting Mrs. Berry. The existence of this document would preclude Mrs. Berry from being considered a spouse under La. R.S. 14:43 B; State v. Williams would thus not apply. The defense nevertheless contended at trial that the preliminary injunction was invalid, as it was issued without benefit of a contradictory hearing.
We need not address the validity of the preliminary injunction. Our review of the evidence reveals no evidence whatsoever to support any of the special circumstances enumerated in R.S. 14:43 A(1), (2) or (3). There is no allegation that the victim was under any incapacity, whether induced or natural, or that she labored under any misconception about the status of her marriage. As the evidence presented herein would not reasonably permit a finding of guilty of simple rape, or guilty of attempted simple rape, the trial court was prohibited from including these verdicts among the responsive verdicts by La.Code Crim. P. art. 814 C. This assignment lacks merit.
Assignment of error forty-five challenges the trial court's affirmative ruling on the State's motion to exclude sexual battery *459 as a responsive verdict. La. R.S. 14:43.1 defines sexual battery as intentionally engaging in certain enumerated acts with another person "who is not the spouse of the offender[.]" In contrast to the simple rape statute, the legislature chose to omit from the sexual battery statute any reference to preliminary injunctions or other court orders involving the dissolution of marriage. Berry could not be found guilty of sexual battery because the evidence showed he was the spouse of the victim. As the evidence thus precludes a finding of guilty of the responsive offense, La.Code Crim. P. art. 814 C again prohibited inclusion of this verdict among the responsive verdicts offered to the jury. This assignment is likewise without merit.
By his forty-sixth assignment of error, Berry challenges the trial court's refusal to add attempted manslaughter to the list of responsive verdicts to his second degree murder charge. La.Code Crim. P. art. 814 A(3) provides that the only responsive verdicts which may be rendered on this charge are guilty, guilty of manslaughter and not guilty. A trial court is without authority to add to the responsive verdicts listed in this statute. State v. Square, 433 So.2d 104, 109 (La.1983). This assignment is meritless.

Jury Charges
Berry's forty-seventh assignment of error urges that the trial court erred in refusing to delete its jury instruction concerning flight of the defendant after the crime. The defense contended at trial that the flight charge is reserved for situations in which a defendant fled from law enforcement authorities, a circumstance not present in this case as Berry turned himself in to police shortly after the shooting. The defense position on this issue is unsupported by the jurisprudence, which indicates that the jury may consider evidence of flight from the scene of a crime whether or not law enforcement personnel are involved. See State v. Davies, 350 So.2d 586, 588-89 (La.1977). As the trial court did not err in including this charge, this assignment lacks merit.
By assignment of error number forty-eight, Berry contends that the trial court erred in declining to charge the jury on the inferences which might be drawn from the State's failure to call witnesses whose testimony might have been unfavorable. See La.R.S. 15:432. The trial court heard argument on this issue before declining to include the requested charge, noting that it would be unduly confusing. A trial court is obligated to give a requested jury charge only where that charge is pertinent to the case. See State v. McCants, 93-1703 (La.App. 1st Cir. 10/7/94); 644 So.2d 752, 755. As the defense failed to specify any witness or testimony to which the charge at issue might pertain, we are unpersuaded that the trial court's refusal to include the charge resulted in any miscarriage of justice, prejudice to substantial rights of the accused, or violation of constitutional or statutory right. See State v. Edwards, 25,963 (La.App.2d Cir. 5/4/94); 637 So.2d 600, 602. This assignment is without merit.

Post Verdict Judgment of Acquittal
Assignment of error number fifty alleges that the verdicts and convictions herein are contrary to the law and evidence, and are not supported by sufficient evidence. The assignment is not argued in brief, however, because appellate counsel was unable to cite any motion for post verdict judgment of acquittal in the record. As noted by counsel, the proper method for raising the issue of sufficiency of the evidence is by post verdict judgment of acquittal. La.Code Crim. P. art. 821. This Court will nevertheless consider this issue, even if it was not properly raised, when it is briefed pursuant to a formal assignment of error. State v. Turner, 577 So.2d 200, 202 (La.App. 1st Cir.1991). Notwithstanding the absence of briefed argument on this issue, we observe that our extensive review of the record before us reveals that the evidence presented here, viewed in a light most favorable to the prosecution, was sufficient to convince a rational trier of fact that all the elements of each crime had been proved beyond a reasonable doubt. This assignment is without merit.

Motion to Reconsider Sentence
Berry's fifty-first assignment of error contends that the trial court erred in *460 denying his motion to reconsider sentence. He urges, without authority, that the mandatory sentencing provisions of La. R.S. 14:30.1 and 14:42 are unconstitutional in that they violate the separation of powers doctrine. However, the Louisiana Supreme Court has consistently held that it is within the legislature's prerogative to determine the length of the sentence imposed for crimes classified as felonies. See, e.g., State v. Prestridge, 399 So.2d 564, 582 (La.1981).
Berry further contends that the imposition of consecutive sentences in this case was excessive. La.Code Crim. P. art. 883 provides that sentences imposed for offenses not arising from the same act or transaction, or constituting parts of a common scheme or plan, should be served consecutively unless the trial court expressly directs otherwise. It is within the sentencing court's discretion to order that sentences run consecutively, rather than concurrently. State v. Conway, 588 So.2d 1369, 1374 (La. App. 2d Cir.1991). Given the nature of the crimes involved, we find no abuse of the trial court's discretion in imposing consecutive sentences. This assignment is without merit.

Patent Error
We have found a potential patent error in the sentences. See La.Code Crim. P. art. 880. The record does not include a sentencing transcript. However, the minute entry reflects that the sentences were imposed without mention of credit for any time served. We note that the commitment is on a form utilized by the district court, and a portion of the language therein provides for credit for time served. The life sentences should reflect that the defendant is to be given credit for any time served prior to execution of his sentence. See State v. King, 604 So.2d 661, 670 (La.App. 1st Cir.1992). Resentencing is not required. However, we remand the case and order the district court to amend the minute entry of the sentencing to reflect that the defendant is to be given credit for any time served.
We also note that, although the minute entry reflects the sentences were imposed without benefit of parole, probation, or suspension of sentence, the commitment simply provides for "two consecutive life sentences". Upon remand, the court should insure that the minutes reflect the sentences actually imposed and, if necessary, correct the commitment to reflect the sentences actually imposed.
CONVICTIONS AND SENTENCES AFFIRMED; REMANDED WITH ORDER.