708 So.2d 1143 (1998)
STATE of Louisiana
v.
Revel DOMINO.
No. 97 KA 0261.
Court of Appeal of Louisiana, First Circuit.
February 20, 1998.
*1144 Doug Moreau & Brenda Creswell, Baton Rouge, for plaintiff/appellee State of Louisiana.
Bertha M. Hillman, Thibodeaux, for defendant/appellant Revel Domino.
Before FOIL, WHIPPLE and KUHN, JJ.
WHIPPLE, Judge.
The defendant, Revel Domino, Jr., was charged by grand jury indictment with second degree murder, in violation of LSA-R.S. 14:30.1. He pled not guilty and, after trial by jury, was found guilty as charged. The defendant received the mandatory sentence of life imprisonment at hard labor, without benefit of parole, probation, or suspension of sentence. He has appealed, alleging two assignments of error, as follows:
1. The trial court erred in allowing the admission of hearsay evidence.
2. The trial court erred in denying the defendant's requested special jury instruction on the State's failure to call a witness.

FACTS
Shortly before 10:00 p.m. on the night of February 21, 1996, Barbara Wilson, the common law wife of the victim, Donald Collier, was awakened by the sounds of gunfire and breaking glass outside her home on Topeka Street in Baton Rouge, Louisiana. The defendant, apparently angered by a belief that Collier had taken a compact disc (CD) or a cassette tape from him, shot out the rear windshield of Ms. Wilson's car with a .32 pistol. Shortly thereafter, the defendant forced his way inside Ms. Wilson's door accompanied by a companion, Roderick Muse. The defendant and Muse began searching the house for the victim and finally found him *1145 in the kitchen. In an apparent reference to the missing CD or tape, the defendant demanded: "[W]here my shit at[?]" or "Bitch, give me my shit." Although the victim denied having the CD or tape, the defendant fired a single shot from the .32 pistol which entered and exited the victim's arm before finally lodging in his shoulder. The defendant then left the kitchen, only to immediately return and fire another shot at close range into the victim's neck which would prove to be fatal. The shooting was witnessed by Ms. Wilson and her twelve year old son, Steven Wilson. Her fourteen year old son, Roderick Wilson, had tried to call the police during this episode.
The victim died at a local hospital within about thirty minutes after the shooting. Meanwhile, the police investigation quickly focused upon the defendant and Roderick Muse. Ms. Wilson and her sons identified both men in photographic lineups shortly thereafter.

ASSIGNMENT OF ERROR NO. ONE
In this assignment of error, the defendant contends that the trial court erred in allowing the admission of hearsay evidence.
Shortly after the shooting, Barbara Wilson and her two sons gave taped statements to the Baton Rouge City Police. At the trial, when the prosecutor sought to introduce these taped statements, the defense objected on the basis of hearsay. The prosecutor responded that the statements were admissible under LSA-C.E. art. 801(D)(1)(b) to rebut the defense assertion that the witnesses were biased because of their relationship to the victim. Although initially inclined to sustain the objection, upon examination of article 801(D)(1)(b), the trial court concluded that the language "an express or implied charge" was broad enough to cover the instant situation and granted the prosecutor's request to introduce the statements. In overruling the defendant's objection, the trial court found that defense counsel had suggested that the witnesses possibly were biased and/or had discussed their testimony with each other.
Louisiana Code of Evidence article 801 D(1)(b) provides:
D. Statements which are not hearsay. A statement is not hearsay if:
(1) Prior statement by witness. The declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is:
* * * * * *
(b) Consistent with his testimony and is offered to rebut an express or implied charge against him of recent fabrication or improper influence or motive;
We find no error in the trial court's ruling allowing the admission into evidence of these taped statements. Defense counsel suggested during voir dire and in his opening statement that the State might not be presenting the whole story because Ms. Wilson and her sons might be biased against the defendant. Each of the boys was cross-examined by defense counsel on the issue of whether or not he had discussed his testimony with his mother and brother. We agree with the trial court's determination that defense counsel's strategy was to suggest these witnesses were biased and might not be presenting the entire story of what happened. In any event, even assuming, arguendo, that the trial court erred in overruling defense counsel's objection and allowing these taped statements to be admitted into evidence, any error was harmless beyond a reasonable doubt. The contents of these taped statements were merely cumulative and corroborative of the previously admitted testimony by these witnesses. See LSA-C.Cr.P. art. 921; State v. Byrd, 540 So.2d 1110, 1114 (La.App. 1st Cir.), writ denied, 546 So.2d 169 (La.1989).
Finally, concerning the defendant's argument that, by introducing the taped statements after the witnesses had testified, he was denied the right to cross-examination relative to those statements, we disagree with this assertion. After the taped statements were admitted and played for the jury, if the defense had any questions of the witnesses regarding their statements, defense counsel could have recalled them to the witness stand. As these witnesses were identified *1146 with the State, defense counsel properly could have used leading questions to cross-examine these witnesses. See LSA-C.E. art. 611(C).
This assignment of error is meritless.

ASSIGNMENT OF ERROR NO. TWO
In this assignment of error, the defendant contends that the trial court erred in denying his requested special jury instruction on the State's failure to call a witness.
Shortly before the instant trial commenced, a motion to compel the testimony of Roderick Muse was filed into the record. Pursuant to LSA-C.Cr.P. art. 439.1, the attorney general, the district attorney, and the trial court agreed to grant Muse immunity in exchange for his compelled testimony against the defendant. However, Muse was never called to testify during the trial. During his closing argument, defense counsel focused upon the State's failure to call Muse as a witness. In her rebuttal closing argument, the prosecutor suggested that the defense also had subpoena powers and was equally free to call Muse as a witness in the case.
During the jury charge conference, the defense requested that the trial court give a jury instruction, based upon LSA-R.S. 15:432, to the effect that it could be presumed that Muse's testimony would not have aided the State, arguing that Muse was a witness under the State's control yet the State had not called him to the witness stand. The prosecutor objected to such an instruction. The trial court, after considering arguments, denied the requested special jury charge.
Louisiana Code of Criminal Procedure article 807 provides:
The state and the defendant shall have the right before argument to submit to the court special written charges for the jury. Such charges may be received by the court in its discretion after argument has begun. The party submitting the charges shall furnish a copy of the charges to the other party when the charges are submitted to the court.
A requested special charge shall be given by the court if it does not require qualification, limitation, or explanation, and if it is wholly correct and pertinent. It need not be given if it is included in the general charge or in another special charge to be given.
In his brief to this Court, the defendant cites State v. Jackson, 527 So.2d 1039, 1043 (La.App. 5th Cir.1988), for the proposition that the failure to call a witness which it has available and who possesses knowledge of material facts pertinent to the resolution of the case entitles the opposing party to the presumption that the witness's testimony would be unfavorable. The defendant points to Muse's immunity agreement with the State as the underlying reason for this special jury charge. The defendant contends that, because of the immunity agreement, Muse was a witness under the State's control and the defendant could not have called him to testify. We need not decide this issue of who controlled Muse as a witness because, for the reasons which follow, we find that the defendant was not entitled to a requested special charge on this issue even if Muse was solely identified with the State.
Initially, we note that the defendant did not comply with the first paragraph of Article 807, which requires that the requested special jury charge be in writing. Thus, the trial court was not required to grant the defendant's requested instruction. State v. Ford, 608 So.2d 1058, 1061 (La.App. 1st Cir. 1992).
Furthermore, even assuming, arguendo, that the defense was unable to timely reduce this requested instruction to writing because of surprise at the State's failure to call Muse as a witness, we find no error in the trial court's ruling denying the defendant's requested special jury charge. As the trial court correctly noted, any special requested instruction herein would have required further explanation to the jury on the issues of Muse's right against self-incrimination and the concept of immunity from prosecution.[1] As this requested special *1147 jury instruction would have required further qualification and/or explanation, we find no error in the trial court's ruling refusing to give the requested charge.
Moreover, even if we were to conclude that the trial court erred in giving this requested special jury instruction, any such error was harmless beyond a reasonable doubt. The refusal to give a requested special charge does not warrant the reversal of a conviction unless it prejudices substantial rights of the accused. See LSA-C.Cr.P. art. 921. During defense counsel's closing argument, he focused upon Muse's absence and suggested that the jury had not heard "the whole truth" because the prosecutor had not called Muse as a witness. Under these circumstances, the suggestion that Muse's testimony would not have aided the State was clearly placed before the jury by defense counsel's closing arguments and, even if the requested special charge was erroneously refused, the defendant was not prejudiced. See State v. Bonanno, 373 So.2d 1284, 1293 (La.1979); State v. McCants, 93-1703, pp. 4-5 (La.App. 1st Cir. 10/7/94); 644 So.2d 752, 755.
This assignment of error is meritless.

CONCLUSION
For these reasons, defendant's conviction and sentence are affirmed.
CONVICTION AND SENTENCE AFFIRMED.
NOTES
[1] The issue of whether or not the State could have produced evidence of chemical testing to establish the victim's blood alcohol level also was raised at trial as a possible reason for the instant requested special jury instruction. Such a special requested charge, had it been reduced to writing, would not have required further explanation in relation to the State's failure to introduce evidence of chemical testing for alcohol. However, the primary basis for requesting this special jury instruction was to address the State's failure to call Roderick Muse to the witness stand and, on appeal, the defendant does not even mention in his brief the chemical testing issue in connection with this requested special jury instruction.