STATE OF LOUISIANA
v.
TIMOTHY WALTER LOFTON.
No. 2008 KA 0747.
Court of Appeals of Louisiana, First Circuit.
September 12, 2008.
NOT DESIGNATED FOR PUBLICATION
JOSEPH WALTZ, HERBERT W. BARNES, JR., ELLEN DAIGLE DOSKEY, Counsel for Plaintiff/Appellee, State of Louisiana
BERTHA M. HILLMAN, Counsel for Defendant/Appellant, Timothy Walter Lofton.
Before: CARTER, C.J., WHIPPLE, AND DOWNING.
WHIPPLE, J.
The defendant, Timothy Walter Lofton, was charged by grand jury indictment with aggravated rape, a violation of LSA-R.S. 14:42. He pled not guilty. Following a trial by jury, the defendant was convicted as charged. The defendant was sentenced to life imprisonment at hard labor without the benefit of probation, parole, or suspension of sentence. The defendant now appeals, asserting the following two assignments of error:
1. The trial court erred in accepting Dawn Buquet[1] as an expert in child abuse investigation and forensic interview.
2. The trial court erred in allowing hearsay testimony of Dawn Buquet regarding other crimes evidence.
Finding no merit in these assignments of en-or, we affirm the defendant's conviction and sentence.

FACTS
In early 2004 or late 2003, fifteen year-old G.J.[2] informed her mother, M.J., that the defendant, M.J.'s former boyfriend, had sexually abused her. According to G.J., the abuse began when she was approximately nine or ten years old. M.J. reported the alleged abuse to law enforcement. On April 2, 2004, Detective Travis Theriot of the Houma Police Department was assigned to investigate the sexual abuse report. After personally speaking with the victim, Detective Theriot contacted the Terrebonne Parish Children's Advocacy Center ("the CAC") to assist with the investigation of the allegations. In response to information received in connection with the investigation, the defendant was arrested and charged with aggravated rape.
G.J. was seventeen years old at the time of trial in 2006. G.J. testified that the defendant raped her when she was nine or ten years old. She explained that one day, after she had gotten into trouble at school, the defendant approached to discipline her. The defendant offered G.J. the option of either getting a "whipping" or letting him see her body. When G.J. refused to remove her clothing, the defendant removed her clothing. According to G.J., the defendant then pushed her onto the bed and got on top of her. G.J. asked the defendant to stop and unsuccessfully attempted to push him off of her. The defendant grabbed G.J.'s hands, pinned them to the bed, and inserted his penis into her vagina. After approximately fifteen minutes, the telephone rang. When the defendant got up to answer the telephone, G.J. fled. The defendant later threatened to kill G.J. if she told anyone about the incident.
According to G.J., the sexual abuse by the defendant continued. On numerous occasions, the defendant engaged in sexual intercourse with G.J. G.J. explained that sometimes the defendant used a condom, but on other occasions he did not. G.J. indicated that the sexual acts, which took place only when her mother and brother were away from the home, occurred so frequently that once, when left alone with the defendant, she immediately tried to hide in the closet because she "knew what was going to happen."
G.J. further testified that the defendant often kissed her vaginal area and also attempted to kiss her on the lips. She explained that he tried to be affectionate, "like [she] was his girlfriend or something." During one encounter, when G.J. started crying, the defendant asked why she was scared and stated, "April wasn't scared." G.J. did not understand what the defendant meant because she did not know anyone named April. G.J. further testified that she later learned that "April" was another child victim the defendant had sexually abused.
According to G.J., the defendant repeatedly threatened to kill her if she told anyone of the abuse. He told G.J. that since he was much larger than she was, he could easily hurt her. The defendant also told G.J. that no one would believe her if she told and that people would think less of her. Fearful, G.J. kept the abuse to herself for years. The defendant and M.J. separated approximately one month after G.J. turned twelve years old. G.J. was fifteen years old when she finally told M.J. what the defendant had done to her.
The defendant took the stand and testified on his own behalf He denied ever having any sexual contact with G.J. He claimed G.J. made the sexual abuse allegations because M.J. was trying to get back at the defendant over a dispute they had.

ASSIGNMENT OF ERROR NO. 1
In his first assignment of error, the defendant argues that the trial court erred in accepting Dawn Buquet as an expert in child-abuse investigation and forensic interviewing. Specifically, the defendant contends that Ms. Buquet was unqualified to give expert testimony because she lacked substantial formal training in child sexual abuse investigation and she was not personally involved in the investigation of this particular case. The defendant further argues that the testimony provided by Ms. Buquet should have been excluded because it did not meet the reliability standards for expert testimony under Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 113 S. Ct. 2786, 125 L. Ed. 2d 469 (1993) and State v. Foret, 628 So. 2d 1116 (La. 1993).
Article 702 of the Louisiana Code of Evidence provides for the qualification of an expert witness:
If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.
It is well-established trial courts are vested with great discretion in determining the competence of an expert witness, and rulings on the qualification of a witness as an expert will not be disturbed unless there was a clear abuse of that discretion. State v. Berry, 95-1610, p. 20 (La. App. 1st Cir. 11/8/96), 684 So. 2d 439, 456, writ denied, 97-0278 (La. 10/10/97), 703 So. 2d 603; Comment (d) to LSA-C.E. art. 702 ("Broad discretion should be accorded the trial judge in his determination as to whether expert testimony should be held admissible and who should or should not be permitted to testify as an expert."). Moreover, once an expert has been found qualified, the trier of fact is entitled to assess credibility and accept or reject the opinion of the expert in light of the expert's qualifications and the facts which form the basis of his or her opinion. See Hickman v. Exide, Inc., 28,495, p. 10 (La. App. 2d Cir. 8/21/96), 679 So. 2d 527, 537. A combination of specialized training, work experience, and practical application of the expert's knowledge can combine to demonstrate that person is an expert. Berry, 95-1610 at p. 20, 684 So. 2d at 456.
The record reflects that, during its case in chief, the State called Dawn Buquet, a forensic interviewer with the CAC. The purpose of Ms. Buquet's testimony at this juncture appears to have been to establish that a delay in disclosure of sexual abuse by children is common. However, before being allowed to provide any general testimony regarding child sexual abuse, Ms. Buquet was questioned regarding her experience and training.
Ms. Buquet testified that prior to becoming a forensic interviewer, she was employed as a detective with the Terrebonne Parish Sheriffs Office for approximately eight years. In her capacity as a detective, she primarily investigated child sexual abuse cases. Ms. Buquet admitted that she does not have any college training in the field of child sexual abuse. She has a bachelor's degree in government with a minor in criminal justice. However, Ms. Buquet explained that she has attended several training courses and/or schools during her tenure as an investigating detective and in connection with her job as a forensic interviewer. These include: 1) investigation-of-sexual-assault school; 2) child sexual abuse school; 3) interview, interrogation, and statement-analysis school; 4) investigation and prosecution of child-sexual-abuse school; 5) advanced forensic interviewing training; and 6) several other continuing education follow-up workshops and seminars. She estimated that, in the last ten years, she has conducted over 500 interviews of children. The State tendered, and the trial court accepted, Ms. Buquet as an expert in child abuse investigation and forensic interviewing. The defendant objected, arguing that Ms. Buquet lacked any substantial formal training and she was in no way involved in the investigation of this case.
As the State correctly notes in its brief, the fact that Ms. Buquet did not complete college coursework in the area for which she was accepted as an expert is of no moment. Given Ms. Buquet's extensive formal training in forensic interview and sex-crime investigation and her years of experience while working at the Terrebonne Parish Sheriffs Office and the CAC, we find the trial court did not abuse its discretion in qualifying Ms. Buquet as an expert witness and allowing her to testify as she did at the trial of this matter. As previously noted, LSA-C.E. art. 702 states that the purpose of expert witness testimony is to assist the trier of fact in understanding the facts and/or evidence at issue in a case. Ms. Buquet's training and experience in investigating child sexual abuse cases was sufficient to qualify her to testify as an expert in this case.
Insofar as the defendant argues that Ms. Buquet's testimony should have been excluded because it did not meet the standards of reliability for expert testimony under Daubert and Foret, we note that counsel for the defense objected only to the trial court's qualification of Ms. Buquet as an expert in the area of child abuse investigation and forensic interviews. When the State asked the series of questions regarding her opinion on the frequency of delayed disclosure of sexual abuse in child victims, defense counsel did not object. Counsel's only objection came later when Ms. Buquet was asked if she would expect a physical examination of a child sexual abuse victim to result in physical findings after disclosure has been delayed for years. Counsel's argument in support of the objection was that the question called for a speculative answer and was outside the field of expertise for which the witness had been accepted. Because no contemporaneous objection was made regarding the reliability and/or overall admissibility of Ms. Buquet's testimony on the issue of the frequency of delayed disclosure, the defendant cannot raise this issue for the first time on appeal. See LSA-C.Cr.P. art. 841; LSA-C.E. art. 103(A)(1); State v. Miles, 98-2396, p. 6 (La. App. 1st Cir. 6/25/99), 739 So. 2d 901, 905, writ denied, 99-2249 (La. 1/28/00), 753 So. 2d 231.
This assignment of error is without merit.

ASSIGNMENT OF ERROR NO. 2
In his second assignment of error, the defendant contends the trial court erred in allowing hearsay testimony from Dawn Buquet regarding other crimes evidence. Specifically, the defendant asserts that although evidence of his prior sexual offense against a child may have been admissible at the trial in this case, Ms. Buquet should not have been allowed to testify regarding specific out-of-court statements made by the victim in that case.[3] The defendant contends Ms. Buquet's testimony regarding the statements made by A.C. in the other case were introduced to prove the truth of the matter asserted and served to bolster the State's case against him. The defendant further asserts that Ms. Buquet's status as a previously accepted expert witness in the case made the hearsay testimony even more prejudicial. Thus, he asserts the erroneous admission of this evidence cannot be said to have been harmless.
The applicable version of LSA-C.E. article 412.2, provided, in pertinent part:[4]
A. When an accused is charged with a crime involving sexually assaultive behavior, or with acts that constitute a sex offense involving a victim who was under the age of seventeen at the time of the offense, evidence of the accused's commission of another sexual offense may be admissible and may be considered for its bearing on the matter to which it is relevant subject to the balancing test provided in Article 403.
Article 412.2 clearly makes the evidence of the defendant's conviction for the sexual abuse of A.C. admissible. The defendant does not challenge the admissibility of the evidence on this ground.
Hearsay evidence is testimony in court, or written evidence, of a statement made out of court, when the statement is being offered as an assertion to show the truth of matters asserted therein and thus rests for its value upon the credibility of the out-of-court asserter. State v. Butler, 93-1317, p. 6 (La. App. 1st Cir. 10/7/94), 646 So. 2d 925, 929, writ denied, 95-0420 (La. 6/16/95), 655 So. 2d 340 (citing State v. Martin, 356 So. 2d 1370, 1373-74 (La. 1978); LSA-C.E. art. 801(C)). Hearsay is not admissible except as otherwise provided by the Code of Evidence or other legislation. LSA-C.E. art. 802. One of the primary justifications for the exclusion of hearsay is that the adversary has no opportunity to cross-examine the absent declarant to test the accuracy and completeness of the testimony. The declarant also is not under oath at the time of the statement. Moreover, the Confrontation Clause of the United States Constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. Const. amend. VI. There is no opportunity for confrontation when an assertion by one party is presented through the testimony of another party. State v. Wille, 559 So. 2d 1321, 1329 (La. 1990), cert. denied, 506 U.S. 880, 113 S. Ct. 231, 121 L. Ed. 2d 167 (1992).
The record in this case reflects that the State provided notice of its intent to use evidence of a similar offense the defendant had previously committed against a different minor victim. At trial, the State called A.C., the victim of prior sexual abuse by the defendant, to testify. A.C. testified that the defendant, the live-in boyfriend of her mother at the time, started sexually abusing her when she was eight years old. According to A.C., the defendant repeatedly touched her vaginal area and once attempted to get her to perform oral sex on him while he watched a pornographic movie. A.C. further testified that the sexual abuse continued until she was approximately thirteen years old. A.C. did not disclose the abuse to her mother until approximately five years later, when she was eighteen years old. A.C.'s mother reported the abuse and the defendant was subsequently charged and convicted of molestation of a juvenile.
During his trial testimony, the defendant admitted his prior conviction for the sexual abuse of A.C., but he denied ever actually abusing A.C. He testified that he only pled guilty to the charge in that case to assure that he would receive a lenient sentence. The defendant testified that, like G.J., A.C. also fabricated the abuse because her mother wanted to get back at him. He claimed A.C.'s mother was upset with the defendant because he left her to commence a relationship with M.J.
On rebuttal, the State called Dawn Buquet to testify regarding her investigation of the defendant's sexual abuse against A.C. This time, Ms. Buquet was not questioned as an expert. To refute the defendant's claim that M.J. encouraged G.J. to make false sexual abuse allegations to "get back at" him, Ms. Buquet testified as a fact witness. Ms. Buquet testified that several years earlier, while she was employed as an investigator with the Terrebonne Parish Sheriff s Office, she interviewed the defendant in connection with an unrelated child sexual abuse case. She further testified that the defendant admitted the sexual contact in that case, but claimed that the victim initiated the contact. The defendant told Ms. Buquet that the minor victim repeatedly came on to him, trying to "entice" him. The hearsay objection came when Ms. Buquet testified that the defendant's statement in that case corroborated some of the details of the sexual encounters related to her by A.C. The following exchange occurred:
[WITNESS]: He told me that April  he corroborated some things that April had told me. April had  if I can say what April had stated to me. April had stated to me that she 
[DEFENSE COUNSEL]: No, I'm going to object to that, Your Honor.
[PROSECUTOR]: Well, April has testified.
[THE COURT]: She did testify. She's here present. Overruled.
Over the objection of the defense, Ms. Buquet was allowed to testify regarding the out-of-court statements made by A.C.
On review, we do not find the evidence in question constitutes inadmissible hearsay. Louisiana Code of Evidence article 801, in pertinent part, provides:
The following definitions apply under this Chapter:
A. Statement. A "statement" is:
(1) An oral or written assertion; or
B. Declarant. A "declarant" is a person who makes a statement.
C. Hearsay. "Hearsay" is a statement, other than one made by the declarant while testifying at the present trial or hearing, offered in evidence to prove the truth of the matter asserted.
D. Statements which are not hearsay. A statement is not hearsay if:
(1) Prior statement by witness. The declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is:
...
(b) Consistent with his testimony and is offered to rebut an express or implied charge against him of recent fabrication or improper influence or motive;
A.C. testified at the trial, subject to cross-examination, concerning her past allegations of abuse by the defendant. Ms. Buquet's testimony repeating A.C.'s statements regarding the sexual abuse by the defendant was generally consistent with A.C.'s trial testimony and was not hearsay. The defendant, by his own trial testimony, alleged A.C.'s trial testimony and her sexual abuse claim against him were fabricated and motivated by her mother's desire for revenge against him. Accordingly, the challenged statements were admissible pursuant to LSA-C.E. art. 801(D)(1)(b) to rebut the defendant's claims. Additionally, as the trial court noted, following the testimony regarding the statements in question, A.C. was present and available for cross-examination by the defense regarding the statements. Thus, the defendant's confrontation rights were not violated by the introduction of the statements. See State v. Domino, 97-0261, p. 4 (La. App. 1st Cir. 2/20/98), 708 So. 2d 1143, 1145-46.
Furthermore, by the time Ms. Buquet testified regarding the statements made by A.C., A.C. had already testified and explained the abuse she suffered at the hands of the defendant. Thus, Ms. Buquet's testimony was generally cumulative of the information already provided by A.C. Accordingly, we find that, if any error occurred in this case, any such error was harmless beyond a reasonable doubt, as the instant guilty verdict was surely unattributable to the error. LSA-C.Cr.P. art. 921; State v. Code, 627 So. 2d 1373, 1384 (La. 1993), cert. denied, 511 U.S. 1100, 114 S. Ct. 1870, 128 L. Ed. 2d 490 (1994).
We also note that, despite having only urged the aforementioned hearsay objection in the trial court, on appeal, the defendant, for the first time, challenges the fact that Ms. Buquet, previously accepted as an expert witness, was also allowed to testify as a fact witness. He argues that allowing Ms. Buquet to testify in two different capacities likely caused the jury to afford her testimony more weight than it should have been given. However, it is well settled that a defendant is limited on appeal to the grounds for objections articulated at trial. A new basis cannot be raised for the first time on appeal. LSA-C.E. art. 103(A)(1); LSA-C.Cr.P. art. 841; State v. Clayton, 427 So. 2d 827, 834 (La. 1982)(on rehearing). Thus, we will not address this portion of the assignment of error.
This assignment of error lacks merit.
For the foregoing reasons, the defendant's conviction and sentence are affirmed.
CONVICTION AND SENTENCE AFFIRMED.
NOTES
[1] In the defendant's brief; the witness's last name is spelled "Boquet." However, throughout the record, the witness's last name is spelled "Buquet." Accordingly, we use the spelling of the witness's name herein as it appears in the record.
[2] In accordance with La. R.S. 46:1844(W), the victim herein is referenced only by her initials. To further protect the identity of the victim, her mother is also referenced by initials.
[3] In a brief statement included in his hearsay assignment, the defendant also challenges the State's notice of its intent to use the evidence of the other crime. He notes that the State submitted notice of evidence of other crimes committed in Terrebonne Parish. He claims the State never gave notice of other crimes committed in Lafourche Parish. Thus, he asserts the other crimes evidence should have been excluded for lack of proper notice. We do not consider the defendant's argument on this issue as it was never raised below in the trial court. The record is devoid of any challenge by the defendant to the sufficiency of the State's notice of its intent to introduce evidence of other crimes. The defendant cannot raise this issue for the first time on appeal.
[4] Louisiana Code of Evidence article 412.2(A) was amended by Acts 2004, No. 465, § 1 to provide as follows:

A. When an accused is charged with a crime involving sexually assaultive behavior, or with acts that constitute a sex offense involving a victim who was under the age of seventeen at the time of the offense, evidence of the accused's commission of another sexual offense crime, wrong, or act involving sexually assaultive behavior or acts which indicate a lustful dispostion toward children may be admissible and may be considered for its bearing on any matter to which it is relevant subject to the balancing test provided in Article 403.