NOT DESIGNATED FOR PUBLICATION

STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

23-35

STATE OF LOUISIANA

VERSUS

LESLIE D. BRUNER

**********

APPEAL FROM THE
TWENTY-EIGHTH JUDICIAL DISTRICT COURT
PARISH OF LASALLE, NO. 19-1540
HONORABLE J. CHRISTOPHER PETERS, DISTRICT JUDGE

**********

CHARLES G. FITZGERALD
JUDGE

**********

Court composed of Candyce G. Perret, Charles G. Fitzgerald, and Guy E. Bradberry, Judges.

CONVICTIONS AND SENTENCES AFFIRMED.

**Michael A. Brewer**
**2030 Jackson Street, Unit D**
**Alexandria, Louisiana 71309**
**(318) 443-4006**
**Counsel for Defendant/Appellant:**
**Leslie D. Bruner**


**Reed Walters**
**District Attorney,**
**Twenty-Eighth Judicial District**
**W. Evans Dorroh, III**
**Assistant District Attorney**
**P.O. Box 1940**
**Jena, Louisiana 71342**
**(318) 992-8282**
**Counsel for Appellee:**
**State of Louisiana**

**FITZGERALD, Judge.**

Defendant, Leslie D. Bruner, appeals her convictions and sentences for two counts of distribution of methamphetamine.

**FACTS AND PROCEDURAL HISTORY**

In early January 2019, Prentice May contacted Detective Todd Roark, of the LaSalle Parish Sheriff's Office, about assisting with a controlled buy of methamphetamine from Defendant. Detective Roark agreed to the assistance, and a plan for the controlled buy was put into motion.

On the day of the buy, January 11, 2019, Mr. May used Detective Roark's vehicle because it was equipped with a video camera. The detective also provided Mr. May with money for the drug purchase. Mr. May, in turn, drove to a Tractor Supply store where he met Defendant and paid for the drugs. Thereafter, Mr. May drove to a second location, a Wal-Mart, where Defendant provided Mr. May with a substance that was later confirmed to be methamphetamine.

A few days later, Mr. May contacted Defendant about purchasing more methamphetamine. This second transaction occurred on January 23, 2019. Once again, Mr. May gave the money to Defendant at one location, and Defendant provided him with the drugs at a second location.

Defendant was subsequently charged by bill of information with two counts of distribution of methamphetamine in violation of La.R.S. 40:967(A)(1). A three-day jury trial was held in July 2022. And at the close of evidence, Defendant was convicted as charged. Four months later, the trial court sentenced Defendant to serve five years at hard labor on each count with the sentences running consecutively.

On appeal, Defendant assigns two errors. First, that the trial court erred by not granting a mistrial. And second, that the trial court erred by imposing an unconstitutionally excessive sentence.

## LAW AND ANALYSIS

## I.   ERRORS PATENT

In accordance with La.Code Crim P. art. 920, we initially review this appeal for errors patent on the face of the record. Here, there is one patent error.

The error patent involves the bill of information. Specifically, the bill of information charges Defendant with two counts of distribution of methamphetamine, both violations of La.R.S. 40:967(A)(1). But while the penalty for distribution of methamphetamine is determined by the weight of the substance, the bill of information fails to specify the weight of the methamphetamine that was distributed by Defendant.

In relevant part, La.R.S. 40:967(B) provides the following penalties for distribution of methamphetamine:

> B. **Violations of Subsection** A. Any person who violates Subsection A of this Section with respect to:
>
> (1) Except as otherwise provided in Paragraphs (2), (3), and (4) of this Subsection, a substance classified in Schedule II for an amount of:
>
> (a) An aggregate weight of less than twenty-eight grams, shall be imprisoned, with or without hard labor, for not less than one year nor more than ten years and may, in addition, be fined not more than fifty thousand dollars.
>
> (b) An aggregate weight of twenty-eight grams or more, shall be imprisoned at hard labor for not less than one year nor more than twenty years and may, in addition, be fined not more than fifty thousand dollars.

In addition, La.Code Crim P. art. 470 states that "[v]alue, price, or amount of damage need not be alleged in the indictment, unless such allegation is essential to

2

charge or determine the grade of the offense." And here, since the penalty is dependent on the weight of the methamphetamine distributed, it is apparent that the weight should have been charged in the bill.

But even still, we consider this omission to be harmless. Louisiana Code of Criminal Procedure Article 487 provides in part:

> A. An indictment that charges an offense in accordance with the provisions of this Title shall not be invalid or insufficient because of any defect or imperfection in, or omission of, any matter of form only, or because of any miswriting, misspelling, or improper English, or because of the use of any sign, symbol, figure, or abbreviation, or because any similar defect, imperfection, omission, or uncertainty exists therein. The court may at any time cause the indictment to be amended in respect to any such formal defect, imperfection, omission, or uncertainty.

> Before the trial begins the court may order an indictment amended with respect to a defect of substance. After the trial begins a mistrial shall be ordered on the ground of a defect of substance.

In *State v. Carr*, 52,273 (La.App. 2 Cir. 9/26/18), 256 So.3d 470, *writ denied*, 18-1815 (La. 4/8/19), 267 So.3d 611, the defendant asserted on appeal that his bill of information was defective because it did not allege the amount of cocaine he possessed. After noting that the defendant did not complain of the alleged error before his conviction, the second circuit explained that he failed to demonstrate "how the omission misled him to his prejudice as required by La.C.Cr.P. art. 464." *Carr*, 256 So.3d at 477.

Louisiana Code of Criminal Procedure Article 464 states:

> The indictment shall be a plain, concise, and definite written statement of the essential facts constituting the offense charged. It shall state for each count the official or customary citation of the statute which the defendant is alleged to have violated. Error in the citation or its omission shall not be ground for dismissal of the indictment or for reversal of a conviction if the error or omission did not mislead the defendant to his prejudice.

3

Unlike *Carr*, Defendant here fails to allege any error in the bill of information and fails to allege that he was prejudiced by the failure of the bill of information to state the weight of the methamphetamine distributed. Defendant also did not raise any objection or lack of notice in the trial court.

In addition, because Defendant was tried by a six-person jury, all parties had to have understood that Defendant was being charged under the lower-weight penalty provision (less than twenty-eight grams). After all, the lower-weight penalty provision is punishable by imprisonment with or without hard labor, while the higher-weight penalty provision (twenty-eight grams or more) is punishable by imprisonment with mandatory hard labor. La.R.S. 40:967(B)(1). And as stated in La.Code Crim.P. art. 782, an offense that is punishable with mandatory hard labor shall be tried by a twelve-person jury, whereas an offense that is punishable with or without hard labor shall be tried by a six-person jury.

In summary, even though the bill of information failed to state the weight of the methamphetamine distributed by Defendant, the error in our view was harmless.

## II. ASSIGNMENT OF ERROR NUMBER 1

Defendant contends that the trial court erred in failing to grant a mistrial when exculpatory and impeachment evidence was withheld, thereby hampering her entrapment defense. Defendant specifically argues that screenshots of her electronic messages with Mr. May were withheld until after the start of trial.

During the State's case-in-chief, Mr. May testified as to his communications with Defendant. Mr. May explained that Defendant initially contacted him through Facebook Messenger, and she informed him of her desire to sell excess methamphetamine. According to Mr. May, he initially declined Defendant's offer because he needed time to contact Detective Roark. But after speaking with

4

Detective Roark, Mr. May contacted Defendant and arranged for the purchase of an eight ball of crystal methamphetamine. During cross-examination, Mr. May was asked about his electronic communications with Defendant. Mr. May explained that he no longer had access to these messages because he lost access to his Facebook account. But even still, Mr. May pointed out that he previously sent Detective Roark a copy of every message that he received from Defendant.

After Mr. May finished testifying, defense counsel raised an objection that he had not been given a copy of the electronic messages during discovery. The court allowed time for defense counsel to explore whether material evidence was withheld. After a brief recess, and out of the presence of the jury, the prosecutor confirmed that Detective Roark was in possession of screenshots of some messages relating to the January 23, 2019 incident. The prosecutor admitted that the State failed to produce the evidence, explaining the items had not been placed in the sheriff's office case file or provided to the State prior to trial. Indeed, the State only became aware of these items during the cross-examination of Mr. May.

The following morning, again out of the presence of the jury, the prosecutor explained that Detective Roark searched his old electronic messages the prior evening and copies of all messages between Mr. May and Defendant were given to defense counsel. The prosecutor explained these messages related only to the January 23, 2019 incident and did not contain exculpatory evidence. Even defense counsel agreed that the messages were inculpatory.

But to further explore whether a mistrial was necessary, the court called Detective Roark back to the stand and allowed defense counsel free reign in the examination of this witness. When asked about the screenshots, Detective Roark testified that he printed each one out and then marked it as "Text from Lesley Bruner

5

1/23/19." And the information contained in the screenshot messages was consistent with the drug sale from January 23, 2019. Yet there were still no messages about the January 11, 2019 transaction, creating an inconsistency with Mr. May's testimony. When asked about this, Detective Roark explained that he had produced every message that Mr. May had given to him.

Defendant then took the stand and denied ever contacting Mr. May about selling methamphetamine. She testified that she was heavily medicated during the exchanges with Mr. May and her memory was spotty. And while she admitted being the person in the videos with Mr. May, she denied having any knowledge of drugs.

After the parties rested their cases, defense counsel "formally" moved for a mistrial due to the late disclosure of what he characterized as material and relevant impeachment evidence. The trial court noted that defense counsel had already agreed that none of the information provided was exculpatory in nature. The trial court asked defense counsel to explain how he was prejudiced beyond his inability to question Mr. May. In response, defense expressed his belief that Detective Roark had more evidence. The State, in turn, pointed out that its office provided everything as soon as it was received, noting that it had been prejudiced in that it could not use the messages during its examination of Mr. May or Defendant.

The court denied the motion for mistrial, ruling:

> Okay. I've listened to the argument in this matter. I'll be quite honest with you, and I'm looking at the chief criminal deputy, I am really concerned that this information was not provided out of a file that was apparently kept completely different from the criminal records file, that wasn't provided there and wasn't provided to the DA's office, and in turn, could not be provided to the defense. This should have been provided prior to last night. That's inexcusable in that regard. However, I agree that the late turning over of the messages, or the screenshots, while it was late, and by all account in agreement of Mr. Lemke, they're inculpatory rather than exculpatory. But in no fashion, form or what have you, are they *Brady* material. I think the real argument that we're talking about is, isn't necessarily what was turned

6

over but what wasn't turned over. Other than the testimony of Mr. May, yeah, I gave them something three and a half years ago, there's nothing to say that the sheriff's office has it. Under direct and cross, the detective said, I never got anything, and at least as far as I'm concerned, even if says, I don't remember, it was pursued. But did you get it? Or is it possible? It was kind of left hanging at that point. I have nothing before me to say that any of that information actually exists. And as a result, if it existed, whether or not it's exculpatory or whether or not it should have been given. So, I have nothing, on the record, before me, I have nothing to grant a mistrial on. So, the Motion for Mistrial is denied.

On appeal, counsel contends that the late disclosure as well as the disappearance of other messages put the defense in an untenable position in light of its use of the entrapment defense.[1] Defense counsel contends that the bulk of the messages show that Mr. May initiated the discussions with Defendant, and counsel submits that the missing messages would have shown the same. Defense counsel also contends that the missing messages would have provided fertile ground for impeachment as well as supporting the defense of entrapment in that they would have shown the extent of Mr. May's efforts and persistence to set up the transactions. Essentially, Defendant contends this evidence was clearly exculpatory and impeachment material in a defense based on entrapment.

In response, the State correctly points out that defense counsel acknowledged to the trial court that nothing in the material provided was exculpatory. The State notes that the messages were initially mentioned on the second day of the three-day trial, and that the messages were not previously known to the State as they were not in the sheriff's office case file. Next, upon discovering during Mr. May's testimony

---

[1] The court instructed the jury that to prove the special defense of entrapment by a preponderance of the evidence, Defendant had to prove she was, "instigated or induced by a law enforcement officer of someone acting for a law enforcement officer into the commission of a crime which they otherwise had no intention of committing." The court further explained, "It is not entrapment, however, if the defendant already had the requisite criminal intent and the officer or someone acting for the officer merely furnished the defendant with the opportunity to commit the offense."

that these messages may exist, the State met twice with Detective Roark—first, at a recess on day two of trial; and second, later that evening—to determine the status and contents of the messages. And after obtaining the messages, the State emailed the messages to defense counsel that evening, following up with hard copies the next morning.

The motion for mistrial is addressed in La.Code Crim.P. 775, which states:

> A mistrial may be ordered, and in a jury case the jury dismissed, when:
>
> (1) The defendant consents thereto;
>
> (2) The jury is unable to agree upon a verdict;
>
> (3) There is a legal defect in the proceedings which would make any judgment entered upon a verdict reversible as a matter of law;
>
> (4) The court finds that the defendant does not have the mental capacity to proceed;
>
> (5) It is physically impossible to proceed with the trial in conformity with law; or
>
> (6) False statements of a juror on voir dire prevent a fair trial.
>
> Upon motion of a defendant, a mistrial shall be ordered, and in a jury case the jury dismissed, when prejudicial conduct in or outside the courtroom makes it impossible for the defendant to obtain a fair trial, or when authorized by Article 770 or 771.
>
> A mistrial shall be ordered, and in a jury case the jury dismissed, when the state and the defendant jointly move for a mistrial.

In *State v. Verret*, 06-1337 (La.App. 1 Cir. 3/23/07), 960 So.2d 208, *writ denied*, 07-830 (La. 11/16/07), 967 So.2d 520, the defendant contended the trial court erred in failing to grant a mistrial due to the prosecution's failure to disclose exculpatory or impeachment evidence until after the defense had rested its case. The victim (M.T.) testified that her father raped her on different occasions and in different locations within their home. But on cross-examination, the victim testified

that men named Mario and Roberto lived with her mother before the victim lived with her father.  At issue in that case was the late discovery by the prosecution of the sheriff's department's interview of the victim.  Once the information was furnished to the defense, the parties reached an "agreement" regarding the interview.  Pursuant to the agreement, the court instructed the jury that the victim had given a statement which was recently discovered.  And in the statement, the victim indicated that Roberto, her mother's boyfriend, had touched her "in her private and then put his private in her butt." *Id.* at 223.  Additional information in the police report was not revealed to the jury due to the absence of an agreement by the parties.  The first circuit concluded that there was no abuse of discretion by the trial court, explaining as follows:

> The suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution. *Brady v. Maryland*, 373 U.S. 83, 87, 83 S.Ct. 1194, 1196–97, 10 L.Ed.2d 215 (1963).  Favorable evidence includes both exculpatory evidence and evidence impeaching the testimony of a witness when the reliability or credibility of that witness may be determinative of defendant's guilt or innocence, or when it may have a direct bearing on the sentencing determination of the jury. *United States v. Bagley*, 473 U.S. 667, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985); *Giglio v. United States*, 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972).  Regardless of request, favorable evidence is material, and constitutional error results from its suppression by the government, "if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Kyles v. Whitley*, 514 U.S. 419, 433–34, 115 S.Ct. 1555, 1565, 131 L.Ed.2d 490 (1995) (citing *Bagley*, 473 U.S. at 682, 105 S.Ct. at 3383). *Bagley*'s touchstone of materiality is a "reasonable probability" of a different result, and the adjective is important.  The question is not whether the defendant would more likely than not have received a different verdict with the evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence.  A "reasonable probability" of a different result is accordingly shown when the government's evidentiary suppression "undermines confidence in the outcome of the trial." *Kyles*, 514 U.S. at 434, 115 S.Ct. at 1566; *Bagley*, 473 U.S. at 678, 105 S.Ct. at 3381.

As is pertinent here, LSA–C.Cr.P. art. 775 provides that a mistrial shall be ordered when prejudicial conduct in or outside the courtroom makes it impossible for the defendant to obtain a fair trial. However, a mistrial is a drastic remedy which should be granted only when the defendant suffers such substantial prejudice that he has been deprived of any reasonable expectation of a fair trial. Determination of whether a mistrial should be granted is within the sound discretion of the trial court, and the denial of a motion for a mistrial will not be disturbed on appeal without abuse of that discretion. *State v. Berry*, 95–1610, p. 7 (La.App. 1 Cir. 11/8/96), 684 So.2d 439, 449, *writ denied*, 97–0278 (La.10/10/97), 703 So.2d 603.

. . . .

Defense counsel indicated he believed the police report was obvious *Brady* material, and ". . . I have no reason to disbelieve it was just received by the District Attorney's office and supplied to us once received, even thought [sic] it's at a late time, the defense would move for a mistrial at this point based on this issue right here alone." The trial court denied the motion for mistrial and permitted the State to respond to the motion.

The State set forth that during her testimony, Stacy Verret indicated M.T. had been taken to the Lafourche Parish Sheriff's Office where she gave a statement and Verret then described the contents of that statement. Following Verret's testimony, the State contacted the Lafourche Parish Sheriff's Office to determine whether, in fact, the referenced report was made, and if the report was made, to request that a copy of the report be faxed to the State immediately. The report was received by the State shortly before the defense rested, and the State did not finish reviewing the report until the recess after the defense rested. Upon learning that the report contained possible *Brady* material, the State disclosed the report to the court and to the defense.

In the instant case, there was no abuse of discretion in the denial of the motion for mistrial. Defendant did not suffer such substantial prejudice that he was deprived of any reasonable probability of a fair trial. The State did not suppress evidence favorable to defendant. Pursuant to the "agreement" between the State and the defense, the trial court instructed the jury that on August 8, 2000, M.T. reported being anally raped by "Roberto."

*Id*. at 222-25.

Here, the trial court did not abuse its discretion in denying Defendant's motion for mistrial. The evidence produced, albeit late, was admittedly inculpatory evidence. Further, these messages substantiated Mr. May's testimony. Defendant

has simply not shown that the timely production of these messages would have made a difference in the outcome of trial. Thus, this assignment is without merit.

## III. ASSIGNMENT OF ERROR NUMBER 2

Defendant contends that her consecutive five-year sentences are excessive and that several mitigating factors dictate the imposition of a lesser sentence. Specifically, she argues that she was fifty-one years old at the time of the offenses with no prior felony convictions. She further asserts that, although the jury rejected her entrapment defense, Mr. May heavily contributed to the occurrence of the offenses. Defendant notes that she was suffering from substance abuse addiction at the time of the offenses. And finally, she claims that she engaged in the transactions to satisfy her own addiction; this was not about making money.

The State, on the other hand, asserts that neither Defendant's motion to reconsider sentence nor the arguments raised at the hearing on the motion urge any specific grounds, relegating this to a bare claim of excessiveness on appeal. *State v. Mims,* 619 So.2d 1059 (La.1993). We agree.

In *State v. Barling,* 00-1241, 00-1591, p. 12, (La.App. 3 Cir. 1/31/01), 779 So.2d. 1035, 1042-43, *writ denied,* 01-838 (La. 2/1/02), 808 So.2d 331, this court reviewed a bare excessive-sentence claim, explaining:

> La. Const. art. I, §20 guarantees that, "no law shall subject any person to cruel or unusual punishment." To constitute an excessive sentence, the reviewing court must find the penalty so grossly disproportionate to the severity of the crime as to shock our sense of justice or that the sentence makes no measurable contribution to acceptable penal goals and is, therefore, nothing more than a needless imposition of pain and suffering. *State v. Campbell,* 404 So.2d. 1205 (La. 1981). The trial court has wide discretion in the imposition of sentence within the statutory limits and such sentence shall not be set aside as excessive absent a manifest abuse of discretion. *State v. Etienne,* 99-192 (La.App. 3 Cir. 10/13/99), 746 So.2d. 124, *writ denied,* 00-0165 (La.6/30/00), 765 So.2d. 1067. The relevant question is whether the trial court abused its broad sentencing discretion, not whether another sentence might have been more appropriate. *State v.*

11

*Cook,* 95-2784 (La. 5/31/96), 674 So.2d. 957, *cert. denied,* 519 U.S. 1043, 117 S.Ct. 615, 136 L.Ed.2d 539 (1996).

An appellate court may consider numerous factors when determining if a sentence is shocking or lacking in acceptable penal goals. These factors include "the nature of the offense, the circumstances of the offender, the legislative purpose behind the punishment and the comparison of sentences imposed for similar crimes." *State v. Smith,* 02-719, p. 4 (La.App. 3 Cir. 2/12/03), 846 So.2d. 786, 789, *writ denied,* 03-562 (La. 5/30/03), 845 So.2d. 1061.

The trial court here provided a solid foundation for the sentence imposed on Defendant. As the trial court put it:

> You [Defendant] further indicated that you do not use illegal narcotics or alcohol. I am confused, I listened to the testimony in your trial, I listened to the police officers, I listened to the tech that talked about what the drugs were, I saw film of you being involved in the drug trade, I saw film if I am remembering correctly and I could be wrong in this because this happened in July so this was four (4) months ago but I think I saw film of you taking a part off of the sell for your own personal use. I remember when you testified on your own behalf because in this matter you took the stand to testify in your own defense. You didn't remember anything about having drug sells or anything, you didn't remember any of this, that none of this really happened in spite of seeing your face on the video and what have you. Then I get your letter, your letter talks about a mistake that you made and that you understand this and that you are sad about because of your activities that you have embarrassed your family and that you know that this is a mistake and how it has impacted. You can't have it both says, I don't remember and I didn't do it to now I made a bunch of mistakes and I have embarrassed my family and I am really sorry. It doesn't work that way. In here you state that basically how my mistakes have impacted my life as well as my families [sic] life . . . My lapse in judgment, lapse in judgment is something that you did not something that you now realize that you did as oppose [sic] to taking any remorse or anything about basically lying on the stand saying you didn't do it. So it has now changed and I understand you may have had more memories now or it may have refreshed your memory from what happened but you know to be honest with you it sounds like more excuses. . . . In any event I have heard it said that drug cases are victimless crimes. I have even heard it said that punishing drug dealers should be lower on the punishment scale because those guys dealing drugs are "just supporting their family" or "they are just selling stuff." You know what I couldn't disagree more. The crime which you have been convicted of is one of

the more reprehensible crimes in my mind in our society. The stuff you are dealing ruins lives, not only for the people that are using your product, but for the people who care for your clients and apparently you have now realized that it has ruined your families [sic] life too. Further, you don't even know if the product you were selling was going to be used by Prentiss May, or whether or not he was going to turn around and sell it to some kid or somebody else for a profit. But you did not care because you had your money. Basically, you are selling poisons that allow you to make a profit on other people's misery. One thing that I find disturbing is that you say that you do not use your product but you are certainly willing to sell it. If you say now that dope is bad for you, why do you sell it to others? Again I have in my notes for this sentencing that I am not sure that I believe that you do not use it, as I remember from the video that you took a portion of the product for yourself when you were transferring the drugs. In any event, taking you at your word at what you are telling me then, this position shows me that you do not care for others and are callous by your nature. Again that is unacceptable in our society. Because of the nature of your offense, and the multiple occurrences of selling methamphetamines in this particular matter, I find that your actions have become a pattern of conduct that must be broken, and if you were given a suspended sentence or placed on probation, there is an undue risk to society that you would continue to commit drug-related offenses. Further, given the serious nature of the offenses of which you are now convicted of, I believe that you are in need of correctional treatment that can be provided most effectively by the commitment to an institution. Distribution of Methamphetamines is a serious offense, and it should not be treated lightly. This is a charge that prey[s] on the weaknesses of others and allows you to make a profit on the sale of poisons. This is not even a situation where treatment can help you. There are no allegations of use of or addiction to illegal substances. The only addiction that I see that you have is to making money through the selling of drugs. Therefore, I believe that a lesser sentence would deprecate the seriousness of the offense charged.

In addition, the aggregate weight of the methamphetamine at issue was less than twenty-eight grams, resulting in a potential sentence on each count of up to ten years with or without hard labor, as well as a possible fine of not more than $50,000.00. La.R.S. 40:967(B)(1)(a).

In *State v. Patterson,* 11-892 (La.App. 3 Cir. 2/1/12), 83 So.3d. 1209, *writ denied,* 12-526 (La. 6/1/12), 90 So.3d. 435, a first-time felony offender was found guilty on five counts of distribution of methamphetamine. He was sentenced to five

years at hard labor on each count with the sentences running consecutively. The sentences were affirmed on appeal.

In the end, Defendant here was found guilty of two counts of distribution of methamphetamine. She was sentenced to consecutive five-year sentences at hard labor. This is a mid-range sentence for which the trial court provided substantial support. We therefore do not find that the trial court abused its broad sentencing discretion. This assignment is without merit.

## DISPOSITION

For the above reasons, Defendant's convictions and sentences are affirmed.

**CONVICTIONS AND SENTENCES AFFIRMED.**

THIS OPINION IS NOT DESIGNATED FOR PUBLICATION.
Uniform Rules—Courts of Appeal, Rule 2-16.3.